**Joann AAMOT, et al., Plaintiffs–Appellants,**

v.

**Robert L. KASSEL, Defendant–Appellee.**

**No. 91–6113.**

United States Court of Appeals, Sixth Circuit.

Argued June 15, 1993.

Decided Aug. 6, 1993.

Erich W. Merrill (argued and briefed), Schaeffer & McCrary, Memphis, TN, for plaintiffs-appellants.

Lewie R. Polk, III (argued and briefed) and Hal Gerber (briefed), Gerber Law Offices, Memphis, TN, for defendant-appellee.

Before: GUY and BATCHELDER, Circuit Judges; and MILES, Senior District Judge.[*]

---

\* The Honorable Wendell A. Miles, Senior United States District Judge for the Western District of Michigan, sitting by designation.

442

BATCHELDER, Circuit Judge.

## I.

Defendant Robert Kassel was ostensibly the legal counsel to a company known as National Coal Exchange (NCE). From April 1980 until December 1981, the principals of NCE sold coal futures to investors across the country. The investment scheme, as it turns out, was a scam, and the Commodity Futures Trading Commission (CFTC) brought an action against the principals of NCE for violations of the Commodity Exchange Act in 1981.[1] At the time, the CFTC thought that Kassel was merely NCE's counsel, and not actively involved in the scheme, so he was not a target of the government action; in fact, he defended NCE at trial. The District Court found that NCE had violated the CEA.

Erich Merrill, counsel for the plaintiffs/appellants here, was originally appointed receiver for NCE in the CFTC litigation. Some five hundred aggrieved investors responded to a questionnaire Merrill sent out regarding NCE's activities. Since NCE's assets were by that time insufficient to pay back the investors, Merrill got permission from the District Court to file suit on their behalf. In November 1983, Merrill as receiver and two other named plaintiffs, individually and on behalf of all purchasers of futures contracts from NCE, brought an action against the officers of NCE, alleging fraud, and claiming that defendants had to indemnify Merrill, as receiver, against NCE liability resulting from the principals' wrongful conduct.[2] Merrill moved for class certification in October, 1984, but hearings on this motion were continued. In July, 1985, Kassel was joined as a defendant in *Jarrett,* and he moved for summary judgment.

The District Court eventually denied the motion for class certification in *Jarrett,* but ordered that any motions to intervene by potential plaintiffs in the action must be filed by December 12, 1988. A substantial number of such motions were timely filed, and on March 1, 1990 were granted. However a number of motions to intervene were not filed by the December 12, 1988 deadline, and those motions were denied.

After the deadline for filing of motions to intervene but before the District Court ruled on those motions, Merrill filed the case now on appeal on behalf of all of those potential plaintiffs who sought to intervene in *Jarrett.* Kassel responded to the complaint with a motion to dismiss for failure to state a claim, Fed.R.Civ.P. 12(b)(6). Merrill then filed in this case a notice of dismissal pursuant to Fed.R.Civ.P. 41(a)(1) on behalf of all of those plaintiffs whose motions to intervene in *Jarrett* had been denied, and a few days later, after the District Court had granted Kassel's motion for summary judgment in *Jarrett* on the basis of the statute of limitations, Merrill filed a notice of dismissal in this case on behalf of the remaining plaintiffs.

Kassel next filed a motion to strike the notices of dismissal filed in this case, maintaining that since his Rule 12(b)(6) motion had been supported by documentation and thus functioned as a motion for summary judgment, the plaintiffs were precluded from dismissing without prejudice as of right under Fed.R.Civ.P. 41(a)(1). The District Court agreed with Kassel; treating his Rule 12(b)(6) motion as one for summary judgment, the court granted his motion to strike, and, on the basis of its order dismissing *Jarrett,* granted Kassel summary judgment in an order filed August 1, 1991.[3] The *Aamot* plaintiffs filed their notice of appeal on August 20; however, we ordered the appeal held in abeyance pending appeal of *Jarrett.* In August 1992, we decided *Jarrett,* affirming in part, but reversing the grant of summary judgment with regard to the fraud claims, holding, among other things, that the

1. *See Commodity Futures Trading Comm'n v. National Coal Exchange, Inc., et al.,* No. 81–2250 (W.D.Tenn., Apr. 2, 1982).

2. The judgment from this initial suit was eventually reviewed by this court in *Jarrett v. Kassel,* 972 F.2d 1415 (6th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1272, 122 L.Ed.2d 667 (1993); we shall refer to it for convenience's sake

as *Jarrett* to distinguish it from the present, related litigation.

3. As the District Court noted in its order granting summary judgment, Kassel was the only defendant remaining in the *Jarrett* case, all other defendants having settled with plaintiffs.

due diligence Merrill undertook as counsel on behalf of the original plaintiffs could properly be attributed to subsequently intervening plaintiffs for the purposes of tolling the statute of limitations due to Kassel's fraudulent concealment of his wrongs. 972 F.2d at 1427. This appeal was then briefed and scheduled for argument.

## II.

■ Appellants first question the District Court's granting of Kassel's motion to strike their notices of voluntary dismissal. In concluding that they could not dismiss voluntarily as of right, plaintiffs contend, the District Court improperly considered defendant's Fed.R.Civ.P. 12(b)(6) motion to dismiss as a summary judgment motion. Since the documents attached to it were "unauthenticated," they argue, the motion could not properly be considered by the court as one for summary judgment under Fed.R.Civ.P. 56.

■ Fed.R.Civ.P. 41(a)(1) limits the plaintiff's authority to dismiss his complaint without prejudice and without the permission of either the adverse party or the court to the period of time before the defendant files an answer or a motion for summary judgment. During that period, the court has no discretion to deny such a dismissal. However, once the defendant files an answer or a motion for summary judgment, plaintiff loses this right. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 394–95, 110 S.Ct. 2447, 2455, 110 L.Ed.2d 359 (1990). Some disagreement persists, however, about how a court should treat a notice of dismissal which is filed after defendant files a motion to dismiss under Fed.R.Civ.P. 12(b)(6), which, because the defendant has appended to it "matters outside the pleading," Fed.R.Civ.P. 12(b), the court may convert, at the court's own behest, to a Rule 56(b) motion for summary judgment.

Here, the District Court granted the defendant's motion to strike plaintiffs' notices of dismissal on the grounds that "a motion for summary judgment was pending at the time plaintiffs filed their notices of dismissal." District Court Opinion at 5. Kassel had attached certain affidavits and exhibits to his motion to dismiss, all of which had been used

in the *Jarrett* litigation. The court reasoned that the plaintiffs had not objected to the documents or moved to strike them; therefore Fed.R.Civ.P. 12(b) required that the court treat the motion as one for summary judgment, thus precluding plaintiff from dismissing as of right. *Id.* at 4.

Some courts have viewed the situation similarly, labelling a Rule 12(b)(6) motion to dismiss as a "pending" motion for summary judgment solely because of the defendant's having attached supporting affidavits or other documents "outside the pleadings" not excluded by the court. *See Wilson–Cook Medical, Inc. v. Wilson*, 942 F.2d 247, 252 (4th Cir.1991) (In determining propriety of motion for voluntary dismissal, "[h]ad the district court accepted and *considered* the affidavits relevant to the 12(b)(6) motion, the motion to dismiss for failure to state a claim would have been converted to a motion for summary judgment.") (citations omitted); *Manze v. State Farm Ins. Co.*, 817 F.2d 1062, 1066 (3rd Cir.1987) (disagreeing with *Tele-views News*, cited below, but stating that where defendant "intend[s] a Rule 56 motion by its motion to dismiss," or where court "treats it as such," voluntary dismissal right barred); *Kolman v. Milwaukee Area Technical College*, 548 F.Supp. 684 (E.D.Wis.1982) (attachment of affidavits converts motion to dismiss to motion for summary judgment); *Bangor Baptist Church v. State of Maine, etc.*, 92 F.R.D. 123, 124 (D.Maine 1981) (same); *Tele-views News Co. v. S.R.B. TV Publishing Co.*, 28 F.R.D. 303, 308 (E.D.Pa. 1961) ("We see no logical reason for differentiating a motion for summary judgment, a motion to dismiss for failure to state a claim accompanied by extraneous matter, and a motion to dismiss for failure to state a claim not accompanied by extraneous matter—at least for the purposes of Rule 41(a).").

Many of these cases seem to view the interplay between Rule 41 and Rules 12 and 56 as barring voluntary dismissal where the parties, particularly the defendant, have spent considerable time and effort in litigation; presumably, it takes more lawyer-hours to prepare an answer or a motion for summary judgment than it does a motion to dismiss. *See, for example, Marex Titanic v.*

*Wrecked and Abandoned Vessel, RMS Titanic,* 805 F.Supp. 375, 377–79 (E.D.Va.1992) (at time plaintiff filed notice of dismissal, court was "way beyond the early stages of the case") *(following Harvey Aluminum, Inc., v. American Cyanamid Co.,* 203 F.2d 105 (2d Cir.), *cert. denied,* 345 U.S. 964, 73 S.Ct. 949, 97 L.Ed. 1383 (1953), but recognizing that denying notice of dismissal where "the defendant had expended much time and effort in the preparation of his case and the case was in the midst of hearings" had "very limited application" and "has been virtually confined to [*Harvey Aluminum's*] facts"); *Tele-views News Co.,* 28 F.R.D. at 308 ("[B]oth the motion for summary judgment and the motion to dismiss for failure to state a claim involve considerable preparation by counsel and study by the Court.") *But see, contra,* 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2363 n. 30 (commenting on the reasoning of *Tele-views News Co.)* ("This is a powerful argument— but it seems better addressed to the Advisory Committee on Civil Rules.").

 This Circuit has never directly spoken to this issue. Rule 41, as presently constituted, states:

> [A]n action may be dismissed by the plaintiff without order of the court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs....

Fed.R.Civ.P. 41(a)(1). This being a rule of procedure on which parties navigating the shoals of litigation must rely without needless doubt or question, we are inclined to take the Rule at face value, and assume that it "means what it says." *Carter v. United States,* 547 F.2d 258, 259 (5th Cir.1977). We agree with the straightforward analysis of the Fifth Circuit:

Rule 41 ... sanctions no such case-by-case analysis of the amount of effort expended by the defendants. Nor does the fact that defendants had "joined issue" on the merits affect plaintiff's ability to dismiss his suit. Unless a defendant has filed an answer or summary judgment motion, the governing provision is rule 41(a)(1). Defendants who desire to prevent plaintiffs from invoking their unfettered right to dismiss actions under rule 41(a)(1) may do so by taking the simple step of filing an answer.

*Id.* Similarly, we decline to agree with the District Court's action and follow those cases which "treat" motions to dismiss filed pursuant to Rule 12(b)(6) as summary judgment motions for the purpose of barring voluntary dismissal.[4] Rule 41(a)(1) explicitly leaves the option to dismiss in the plaintiff's hands; once plaintiff gives his notice, the lawsuit is no more.

The Rule permits plaintiff to take such action "at any time before service by the adverse party of an answer or motion for summary judgment, whichever first occurs." Again, this language unambiguously requires a defendant, in order to make plaintiff put his money where his mouth is, to *serve* plaintiff with a summary judgment motion or an answer. Permitting a defendant, merely by appending to his Rule 12(b)(6) motion materials "outside the pleadings," regardless of their scope, content or form, to abridge a plaintiff's right to voluntarily dismiss his action without prejudice, not only circumvents the plain language of the rule, but flies in the face of the "time and effort in litigation" rationale. Furthermore, the clear language of Rule 12(b) which permits a 12(b)(6) motion accompanied by extraneous materials to be treated as a motion for summary judgment is

---

4. These courts' reasoning, particularly in considering the defendant's having spent time and money responding to the suit, may derive from the advisory committee's note to Fed.R.Civ.P. 41(a), which explains the addition to the Rule in 1946 of motions for summary judgment, where previously only an answer filed by defendant could bar plaintiff's voluntary dismissal. "Since such a motion [for summary judgment] may require even more research and preparation than the answer itself, there is good reason why the service of the motion, like that of the answer, should prevent a voluntary dismissal by the adversary without court approval." However, since the Committee was presumably well aware of the existence and effect of Rule 12(b)(6) motions to dismiss, as well as that Rule's provision for the court to convert such a motion to a motion for summary judgment, we must assume the drafters of the Rules chose not to include such motions in Rule 41(a).

directed, not at the parties, but at the court; conversion takes place at the discretion of the court, and at the time the court affirmatively decides not to exclude the extraneous matters.

The consequences to the plaintiff differ hugely; for this reason, once the court opts to convert a 12(b)(6) motion into a summary judgment motion, it must give "all parties ... reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12(b)(6). Obviously, at least to us, Rule 41 deals with an entirely different phase of the case, one in which the plaintiff is left free to change his mind about prosecuting his action, and the defendant has the simple option, as the *Carter* court noted, of filing an answer or motion for summary judgment, should he wish to avoid wasting time and money or preclude future prejudice to his interests.[5]

Plaintiffs here filed their notices of dismissal prior to defendant's filing an answer or motion for summary judgment. Since a Rule 41(a)(1) notice of dismissal is self-effectuating, leaving no basis upon which a District Court can prevent such a dismissal, we therefore conclude that plaintiffs' cases were necessarily dismissed without prejudice, effective immediately upon their filing of the notices. The District Court erred in granting defendant's motion to strike these notices.

### III.

The case at bar having been dismissed in its entirety as of October 24, 1990, the other issues in this appeal, including the dispute over the propriety of the District Court's grant of summary judgment, are rendered moot.

### IV.

For the reasons stated, the judgment of the District Court is **VACATED** and the case **DISMISSED** without prejudice.

---

**5.** We believe the Rules reflect the otherwise common sense notion that the parties, not the court, are in the best position to weigh their interests and risks, particularly in the early phases of litigation.