**Mark JORGENSEN, Plaintiff,**

v.

**PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant.**

Civ. A. No. 93–5377 (DRD).

United States District Court, D. New Jersey.

March 22, 1994.

As Amended on Denial of Motion to Clarify April 29, 1994.

Nancy Erika Smith, Smith Mullin, P.C., West Orange, NJ, for plaintiff.

John J. Peirano, Carpenter, Bennett & Morrissey, Newark, NJ (Reid L. Ashinoff, Richard L. Fenton, Sonnenschein, Nath & Rosenthal, New York City, of counsel), for defendant.

## OPINION

DEBEVOISE, District Judge.

The case is presently before the court on defendant's motion to strike plaintiff's notice of dismissal filed pursuant to FED.R.CIV.P. 41(a)(1). I directed that in addition to addressing defendant's motion, the parties address plaintiff's previously filed motion to remand this action to the state court from which defendant removed it.

### PROCEDURAL HISTORY

Plaintiff Mark Jorgensen filed a complaint in the New Jersey Superior Court on November 4, 1993. Plaintiff asserted two claims: (i) violation of the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19–1 *et seq.* and (ii) defamation.

Defendant removed the action from state court, asserting that the action is preempted by the Employee Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*

Defendant also moved to dismiss the complaint pursuant to FED.R.CIV.P. 12(b)(6) on ERISA preemption grounds. Plaintiff moved to remand the case to state court. The parties submitted affidavits in support of and in opposition to the various motions.

Before the motions were argued, I entered a protective order placing certain documents under seal and imposing requirements upon plaintiff with respect to disclosure of confidential information. Thereupon plaintiff filed a notice of voluntary dismissal pursuant to FED.R.CIV.P. 41(a)(1). Shortly thereafter, plaintiff refiled a similar or identical complaint in the state court and defendant removed the new state court action to this court. The circle was completed when the new action was assigned to me.

Defendant moved to strike plaintiff's dismissal of the original action. I directed that on the return date of defendant's motion that parties be prepared to argue plaintiff's remand motion.[1]

For the following reasons, defendant's motion to strike plaintiff's notice of dismissal will be granted, and plaintiff's motion for remand to the state courts will also be granted.

### STATEMENT OF FACTS[2]

In or about May of 1992, defendant reemployed plaintiff in its Prudential Real Estate Investment ("PREI") section as its Managing Director in charge of the real estate portfolios in the PRISA I, PRISA II, and PRISA III accounts ("PRISA").[3] Certification of Mark Jorgensen, § 2 ("Certification"). Plaintiff's duties included overseeing investment portfolios and implementing investment objectives, although he did not have authority to buy or sell properties. Certification § 3.

When he returned to Prudential, plaintiff visited almost 160 PRISA properties. Complaint, § 5. As a result of these visits, plaintiff became concerned about the valuation of these properties. Certification § 9 & 10; Complaint § 6. Plaintiff expressed these concerns to his supervisors and submitted a report detailing his concerns regarding overvaluation of PRISA holdings. Complaint § 9. On July 27, 1993, plaintiff refused to sign the quarterly report. Complaint at § 12. Consequently, several meetings took place with a law firm and other employees of defendant, culminating in plaintiff being placed on a leave of absence, and being stripped of all his responsibility for management of PRISA portfolios. Complaint at §§ 13–19.

1. Plaintiff has also moved that I recuse myself. That motion was made returnable two weeks after the return date of defendant's motion to strike the dismissal.

2. The facts set forth herein are derived from the complaint and the affidavits which the parties submitted. The findings in this opinion are based upon those documents and are for the purposes of the pending motions only.

3. Plaintiff was initially employed by defendant from June of 1973 until August of 1985. He began as a Senior Appraiser and was ultimately promoted to Vice President, Portfolio Management, in charge of defendant's closed-end real estate portfolios. In 1985, plaintiff, of his own volition, left to pursue other opportunities. Complaint of Mark Jorgensen, [hereinafter "Complaint"].

On August 12, 1993, plaintiff was removed as Managing Director in charge of PRISA accounts. Complaint at § 21. When plaintiff returned from his leave of absence, his office had been moved, and the number of people which he oversaw had been reduced. Complaint at § 22.

Plaintiff alleges that these were retaliatory acts for his raising the question of possible overvaluation of PRISA properties. Complaint at § 28. His first count alleges damage to his reputation, severe mental anguish, stress, humiliation, and loss in income and other benefits. His second claim alleges defamation by defendant's accusations that he violated Securities and Exchange Commission ("SEC") regulations. Complaint at § 30–32.[4] The complaint asserts only state law causes of action and does not rely in any way upon ERISA.

Plaintiff in his certification and defendant's Assistant General Counsel, Joseph D. Margolis in his certification have described the general nature of the PRISA accounts and defendant's role with respect to them. The three PRISA accounts were open-ended real estate equity funds. Each was established to offer tax-qualified pension plans the opportunity to invest their funds in a managed portfolio of real property on a commingled basis. According to Margolis, each PRISA account was subject to the provisions of ERISA. PRISA accounts were managed by PREI, which was a unit of defendant. The sole function of PREI was to provide real estate investment advisory and portfolio asset management services to institutional investors.

Participation in PRISA accounts is limited to pension plans qualified under Section 401(a) of the Internal Revenue Code, governmental plans qualified to hold separate account contracts and other plans where a unit value account is maintained for each participant and 33% or less of the fund for which such unit value is determined is placed in PRISA. Some of the assets in the commingled funds of PRISA I and II are not pension accounts that are governed by ERISA, such as state or public funds.[5] Defendant is currently seeking to expand its PRISA accounts to include foreign investors, endowments, and foundations—entities whose plans would not be subject to ERISA.

The PRISA accounts are governed by a document entitled "Essentials of Method of Operation" and participants execute a contract, appointing defendant as an investment manager of the participant's investment in PRISA. Neither document refers to ERISA although in the former contract defendant acknowledges that it is a fiduciary with respect to a participant's investment in PRISA. According to Assistant General Counsel Margolis "[i]n its fiduciary role as an investment manager, Prudential is subject to ERISA and at all times attempts to manage PRISA portfolios in accordance with its obligations as an ERISA fiduciary." (Margolis Certification, § 6).

As Managing Director overseeing the investment of PRISA portfolios, plaintiff was unaware that these portfolios were subject to separate ERISA requirements and none of his criticisms or questions concerning their valuations were based on ERISA requirements or regulations. Rather his evaluations and judgments were based on his understanding of sound investment and accounting practices and the general duties which a fund manager has to its clients. His use of the term "fiduciary" in his discussions and memoranda to his superiors was not in a technical ERISA sense but reflected his understanding of defendant's obligations.

## DISCUSSION

I. Motion to Strike

Rule 41(a)(1) specifies that "an action may be dismissed by the plaintiff without order of

---

4. After plaintiff disclosed publicly the documents which are subject to the sealing order, defendant discharged him.

5. According to the Supplemental Affidavit of Joseph D. Margolis, the percentage of each portfolio comprised of pension plans qualified under § 401(a) of the Internal Revenue Code and subject to the provisions of ERISA is: PRISA I— 90%; PRISA II—74%; PRISA III—100%. Measured by total dollars invested in each portfolio, the percentage of each portfolio composed of pension plans qualified under § 401(a) of the Internal Revenue Code and subject to the provisions of ERISA is PRISA I—81%; PRISA II—70%; PRISA III—100%.

court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs...." This rule allows plaintiff "to dismiss an action voluntarily and without court intervention." *Manze v. State Farm Ins. Co.,* 817 F.2d 1062, 1065 (3d Cir.1987). The Third Circuit opined that:

> This rule affixes a bright-line test to limit the right of dismissal to the early stages of litigation, *See D.C. Electronics, Inc. v. Nartron Corp.,* 511 F.2d 294, 296–97 (6th Cir.1975); *Universidad Central Del Caribe, Inc.,* 760 F.2d [14,] 19 n. 5 [1st Cir. 1985]. In the words of the Court of Appeals for the Seventh Circuit,
>
> > Rule 41(a)(1) as it was drafted simplifies the court's task by telling it whether a suit has reached the point of no return. If the defendant has served either an answer or a summary judgment motion it has; if the defendant has served neither, it has not.
>
> *Winterland Concessions Co. v. Smith,* 706 F.2d 793, 795 (7th Cir.1983).

*Id.; see* 5 Moore's Federal Practice § 41.-02[1].

In *Manze,* the Third Circuit criticized the decision in *Tele–Views News Co. v. S.R.B. TV Publishing Co.* and reversed a lower court decision that relied on its holding. In *Tele–Views,* the court held that there was "no logical reason for differentiating a motion for summary judgment, a motion to dismiss for failure to state a claim accompanied by extraneous matter, and a motion to dismiss for failure to state a claim not accompanied by extraneous matter—at least for the purposes of Rule 41(a)." *Tele–Views News Co. v. S.R.B. TV Publishing Co.,* 28 F.R.D. 303, 307–08 (E.D.Pa.1961) (citations omitted).

In *Manze* the Circuit did not allow conversion of a Rule 12(b)(6) motion into a summary judgment motion because: (i) defendant did not intend a Rule 56 motion, (ii) the district court did not treat it as such, (iii) the district court did not allow the parties reasonable opportunity to present material pertinent to a Rule 56 motion,[6] and (iv) the district court dismissed the action because of a failure to state a claim. *Manze,* 817 F.2d at 1066.

By disallowing conversion of a Rule 12(b)(6) motion into a summary judgment motion in *Manze,* the Court of Appeals recognized that such a conversion was allowable:

> Concededly, a Rule 12(b)(6) motion may be treated as one for summary judgment for Rule 41(a)(1)(i) purposes. *See, e.g., Exxon Corp. v. Maryland Casualty Co.,* 599 F.2d 659, 661 (5th Cir.1979); *Bangor Baptist Church v. Maine, Dep't of Educ. and Cultural Services,* 92 F.R.D. 123, 124 (D.Me. 1981).

*Manze,* 817 F.2d at 1066; *see also Wiley v. Hughes Capital Corp.,* 746 F.Supp. 1264, 1275–76 (D.N.J.1990); *Rose v. Bartle,* 871 F.2d 331, 339–40 (3d Cir.1989). The Court established guidelines for such a conversion: (i) matters outside the pleading must accompany defendant's Rule 12(b)(6) motion,[7] (ii) parties must be beyond the early stages of litigation, (iii) defendant must have intended a motion that would be fatal to plaintiff's cause of action, (iv) the district court must treat the motion as potentially fatal to plaintiff's cause of action, and (v) the district court must allow both parties a reasonable opportunity to present material pertinent to the motion for summary judgment.

Because neither an answer nor a motion for summary judgment was filed, the above

---

**6.** A court must be cautious when it converts a Rule 12(b)(6) motion into a motion for summary judgment. In view of the finality of summary judgment, parties must be given notice and heard fully. *Manze,* 817 F.2d at 1066; *Rose v. Bartle,* 871 F.2d 331, 340 (3rd Cir.1989); *Wiley v. Hughes Capital Corp.,* 746 F.Supp. 1264, 1276 (D.N.J.1990); *Aamot v. Kassel,* 1 F.3d 441, 445 (6th Cir.1993).

**7.** This is in recognition of Rule 12(b) of the Fed.R.Civ.P. which states in part:

> [i]f, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, *matters outside the pleading are presented to and not excluded by the court,* the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56.
> (emphasis added).

criteria must have been satisfied if defendant's motion to dismiss is to be treated as a motion for summary judgment.

■ Before plaintiff filed his voluntary dismissal, both parties submitted briefs on defendant's Rule 12(b)(6) motion and plaintiff's motion to remand. These briefs were accompanied by affidavits and certifications. The papers presented a multitude of issues including: the nature of ERISA preemption, whether plaintiff's case was properly removed to federal court, whether ERISA has a remedy for plaintiff, and several other related issues. It is manifest that defendant's Rule 12(b)(6) motion presented matters outside the pleadings.[8]

It is also clear that the other conditions have been met. The parties are well beyond the early stages of litigation, indeed, plaintiff has initiated another state action which has been removed to federal court and already been assigned to me. The defendant has asked that plaintiff's action be dismissed with prejudice. I have treated the motion to dismiss as potentially fatal to plaintiff's cause of action. Finally both parties have had reasonable opportunity to present material regarding this action.

■ Beyond the technical aspects of whether to grant defendant's motion to strike plaintiff's voluntary dismissal, is the consideration that plaintiff filed a similar case in state court the same day he filed his voluntary dismissal. Plaintiff must have known that defendant would remove his new action to the federal court and perhaps hoped that a judge *other than myself* would be assigned to the case. Thus the dismissal was filed for an improper purpose—another reason to strike it.

For these reasons, defendant's motion to strike plaintiff's voluntary dismissal pursuant to FED.R.CIV.P. 41(a)(1), is granted.

## II. Motion to Remand

A. *General Considerations:* This action was removed to this court pursuant to 28 U.S.C. § 1441(a) which provides that: "any civil action brought in a State court of which the district courts of the United States have original jurisdiction may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "One category of cases over which the district courts have original jurisdiction are 'federal question' cases; that is, those cases 'arising under the Constitution, laws, or treaties of the United States.' 28 U.S.C. § 1331." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987).

■ Defendant asserts that the action is governed by ERISA. Not only is ERISA a law of the United States, it contains a broad preemption clause. *FMC Corp. v. Holliday*, 498 U.S. 52, 58, 111 S.Ct. 403, 407–08, 112 L.Ed.2d 356 (1990); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45–46, 107 S.Ct. 1549, 1551–52, 95 L.Ed.2d 39 (1987). The clause reads:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter *relate to any employee benefit plan* described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

29 U.S.C.A. § 1144(a) (emphasis added). The purpose of this broad preemption clause was to ensure plans and plan sponsors that they would be subject to a uniform body of benefit law, minimizing the administrative and financial burden of complying with conflicting requirements of the various States. *Ingersoll–Rand v. McClendon*, 498 U.S. 133,

---

**8.** Plaintiff, in his brief opposing defendant's motion to strike, relies on *Aamot v. Kassel*, indicating it is the most recently articulated law in this area. The Sixth Circuit states;

> the clear language of Rule 12(b) which permits a 12(b)(6) motion accompanied by extraneous materials to be treated as a motion for sum-

> mary judgment is directed ... at the court; conversion takes place at the discretion of the court, and at the time the court affirmatively decides not to exclude the extraneous matters.

*Aamot v. Kassel*, 1 F.3d 441 (6th Cir.1993). In this case I had not yet decided whether to exclude any matters.

142, 111 S.Ct. 478, 484–85, 112 L.Ed.2d 474 (1990).

An "employee benefit plan" or "plan" is defined as "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both...." ERISA, 29 U.S.C.A. § 1002(3). Both employee welfare benefit plans and employee benefit plans are, "any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both...." ERISA, 29 U.S.C.A. § 1002(1 & 2).[9]

■ The complaint in the present cause, however, makes no mention of ERISA and the claims set forth in the complaint are based exclusively upon state statutory and common law, namely (i) CEPA[10] and (ii) common law defamation principles. Although at the time of removal defendant expected to raise the defense of preemption, the existence of a federal law defense usually does not provide a basis for removal. "The 'well-pleaded complaint rule' is the basic principle marking the boundaries of the federal question jurisdiction of the federal dis-

trict courts." *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987), citing *Franchise Tax Board of Cal. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), in which the Court held that ERISA preemption, without more, does not convert a state claim into an action arising under federal law.

Thus, the first question which must be resolved is whether this case is one of those ERISA actions which falls within the exception to the well-pleaded complaint rule as spelled out in the *Metropolitan Life Ins. Co.* case. Only if the answer to that question is in the affirmative, do I reach the question whether in fact ERISA preempts plaintiff's claims.

B. *Well–Pleaded Complaint Rule: Metropolitan Life Ins. Co., supra,* governs the removability issue. In that case a General Motors ("G.M.") employee sued in state court his employer, G.M. and its welfare plan insurer, Metropolitan Life for breach of the welfare plan contract and for wrongful termi-

9. The employee welfare benefit plan:
   was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services or (b) any benefit described in section 186(c) of this title (other then pensions on retirement or death, and insurance to provide such pensions).
   ERISA, 29 U.S.C.A. § 1002(1) (1985 & Supp. 1993).
   An employee pension benefit plan:
   (i) provides retirement income to employee, or
   (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond, regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan."
   ERISA, 29 U.S.C.A. § 1002(2)(A) (1985 & Supp. 1993).

10. N.J.Stat.Ann. § 34:19–3 (West 1988 & P.P. 1993) provides:
    An employer shall not take any retaliatory action against an employee because the employee does any of the following:

   a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer or another employer, with whom there is a business relationship, that the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law;
   b. Provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any violation of law, or a rule or regulation promulgated pursuant to law by the employer or another employer, with whom there is a business relationship; or
   c. Objects to, or refuses to participate in any activity, policy or practice, which the employee reasonably believes:
      (1) is in violation of a law, or a rule or regulation promulgated pursuant to law;
      (2) is fraudulent or criminal; or
      (3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.
   An aggrieved employee may institute a civil action and seek various forms or relief, i.e., an injunction to restrain continued violation of CEPA, reinstatement, restoration of fringe benefits, seniority, lost wages, payment of costs and attorney's fees, punitive damages, and a fine to be paid to the state. N.J.Stat.Ann. § 34:19–5 (West 1988 & P.P.1993).

nation allegedly in retaliation for filing a workers' compensation claim. G.M. and Metropolitan Life removed the state action to the federal court asserting that ERISA provided federal jurisdiction over the contract claim and that there was pendant jurisdiction over the state law claim. The district court granted summary judgement in favor of G.M. and Metropolitan Life. The court of appeals reversed, holding that under the well-pleaded complaint rule removal jurisdiction was lacking.

On appeal the Supreme Court noted that the action not only "related to" an employee benefit plan, but in addition to that the action was by a participant or beneficiary to recover benefits due to him under the plan and thus was specifically provided for in 29 U.S.C. § 1131(a)(1)(B).

The Supreme Court further observed that preemption is ordinarily a defense and when that defense does not appear on the face of a well-pleaded complaint removal to a federal court is not authorized, citing *Franchise Tax Board v. Construction Laborers Vacation Trust, supra.*

The question before the Supreme Court in the *Metropolitan Life Ins. Co.* case was whether that particular case fell within the narrow exception to the well-pleaded complaint rule carved out in *Avco Corp. v. Aero Lodge, I.A.M. & A.W.*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968). In *Avco* the Court had held that when providing a specific remedy for the violation of labor-management contracts Congress gave § 301 of the LMRA a preemptive force so powerful as to displace entirely any state cause of action for such a violation.

In *Metropolitan Life Ins. Co.*, the Court found upon examination of the language of ERISA and its legislative history a "clear intention to make § 502(a)(1)(B) suits by participants or beneficiaries federal questions for the purposes of federal court jurisdiction in like manner as § 301 of the LMRA." 481

U.S. at 66, 107 S.Ct. at 1547. Plaintiff in the present case is not a participant or beneficiary of a plan, nor is relief available to him under § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). Thus the question is whether the exception to the well-pleaded complaint rule extends to a person in his circumstances.

The fact that plaintiff is not a plan participant or beneficiary distinguishes this case significantly from *Metropolitan Life Ins. Co.* In that case the plaintiff, as G.M.'s employee, was a participant and beneficiary of the plan which Metropolitan Life insured. Repeatedly throughout its opinion the Court expressed the exception of the well-pleaded complaint rule in terms of the claims of "participants" or "beneficiaries." Nowhere does the opinion suggest that the claims of other kinds of plaintiffs would fall within that exception.

Plaintiff, of course, is far removed from a plan or from the creator of a plan. He is simply the employee of an employer which manages funds in which plans and other entities invest. *Metropolitan Life Ins. Co.* does not support the conclusion that with respect of claims of persons such as plaintiff ERISA's preemptive force is so powerful as to bring them within the exception to the well-pleaded complaint rule.

Critical to the Court's ruling in *Metropolitan Life Ins. Co.* was the fact that the plaintiff beneficiary had a specific remedy under § 1132(a)(1)(B). Plaintiff, not being a participant or beneficiary, does not have a remedy under § 1132(a)(1)(B). The question arises whether he has any ERISA remedy.

ERISA § 510, (29 U.S.C.A. § 1140),[11] protects whistleblowers from being retaliated against. *Anderson v. Electronic Data Systems Corp.*, 11 F.3d 1311, 1314–15 (5th Cir. 1994); *Hashimoto v. Bank of Hawaii*, 999 F.2d 408, 411 (9th Cir.1993). In this case, plaintiff has not given information or testified in an inquiry or proceeding relating to

---

**11.** The relevant part of the statute reads:
It shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to this

chapter or the Welfare and Pension Plan Disclosure Act. The provisions of section 1132 of this title shall be applicable in the enforcement of this section.
ERISA § 510, 29 U.S.C.A. § 1140 (1985).

ERISA, as required by ERISA § 510.[12] However, in *Hashimoto* the Ninth Circuit extended ERISA whistleblower protections to include the "first step" of raising the problem to the employee's superiors.[13] *Cf. Anderson,* 11 F.3d 1311.

Section 1140 makes the provisions of § 1132 applicable to its enforcement. Section 1132(a) (entitled "Persons entitled to bring a civil action") limits the people empowered to bring a civil action and limits the subjects of those actions. Unless an implied, non-statutory remedy can be derived from § 1140, § 1132(a)(3) provides the only remedy available to plaintiff under ERISA.[14]

Since plaintiff is not a plan participant or beneficiary, the question is whether he is a fiduciary. It may be that defendant, plaintiff's employer, is a fiduciary vis a vis the ERISA plans whose funds it holds. The court in *Hashimoto* extended fiduciary status beyond a corporate body to include "agents by which the corporation must act." *Hashimoto v. Bank of Hawaii,* 999 F.2d at 411 (citing *Mertens v. Hewitt Associates,* — U.S. —, —, 113 S.Ct. 2063, 2066, 124 L.Ed.2d 161, 167 (1993)). Extending fiduciary status from the corporation to the employee would bring plaintiff within the ambit of § 1132(a)(3). It is a question whether in the present case plaintiff should be deemed a fiduciary with respect to ERISA plans whose assets are in a PRISA account.

■ *Mertens* explains the nature of the extension of "fiduciary" from employer to employee and points to what may be one of the distinguishing facts between the case at bar and *Hashimoto:*

The statute provides that not only the persons named as fiduciaries by a benefit plan ... but also anyone else who exercises discretionary control or authority over the plan's management, administration, or assets, see § 1002(21)(A), is an ERISA 'fiduciary.' Fiduciaries are assigned a number of detailed duties and responsibilities, which include 'the proper management, administration, and investment of [plan] assets, the maintenance of proper records, the disclosure of specified information, and the avoidance of conflicts of interest.' *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 142–143, 87 L.Ed.2d 96, 105 S.Ct. 3085, 3090–91 (1985); see 29 U.S.C. § 1104(a).

*Mertens v. Hewitt Associates,* — U.S. —, —, 113 S.Ct. 2063, 2065–66, 124 L.Ed.2d 161, 167 (1993) (additions made by the Court). Proximity to the plan is a necessary component for fiduciary status, both for the employer and the employee. In *Hashimoto,* plaintiff was an employee of the Bank of Hawaii; the plans she raised concerns about were the Bank's; she administered the plans; and she alleged that she was asked to administer them improperly. *Hashimoto v. Bank of Hawaii,* 999 F.2d at 409–10. This is a far cry from the case at bar. In this case, plaintiff is not an employee of the plans involved; the plans involved are not his employer's; and at most the employer is an ERISA fiduciary of the plans with respect to only some of its functions. It is simply an investment vehicle for plan assets and non-plan assets, not all of which are subject to ERISA. Clearly, Hashimoto was in closer proximity to a plan than was Jorgensen.[15]

12. *See supra* note 11.

13. The Ninth Circuit reasoned:

> The normal first step in giving information or testifying in any way that might tempt an employer to discharge one would be to present the problem first to the responsible managers of the ERISA plan. If one is then discharged for raising the problem, the process of giving information or testifying is interrupted at its start: the anticipatory discharge discourages the whistle blower before the whistle is blown.

*Hashimoto v. Bank of Hawaii,* 999 F.2d 408, 411 (9th Cir.1993). This reasoning protects the employee who first attempts to resolve the problem internally before taking the drastic step of announcing to the public *possible* improprieties committed by the employee's employer.

14. The relevant part of the statute reads:

> A civil action may be brought ...
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C.A. § 1132.

15. *Anderson* is also distinguishable from the case at bar because of the plaintiff's proximity to the

264

Further, the structure and language of § 1132(a) shows that the purpose of subsection (a)(3) (unlike subsection (A)(1)) is to provide a vehicle for bringing a plan into compliance with ERISA through equitable relief rather than to provide an individual with a remedy for wrongs committed against him or her.

■ Thus there are three fundamental differences between the present case and *Metropolitan Life Ins. Co.* First, plaintiff is not a participant or a beneficiary of any of the ERISA plans which have invested in a PRISA account. Second, plaintiff does not have a remedy under § 1132(a)(1)(B). Any remedy which might be found in § 1132(a)(3) is, as stated previously, equitable in nature and for the primary benefit of the plan rather than the injured person. Third, it is at least questionable whether ERISA provides any remedy for a whistleblower in plaintiff's situation. In light of these significant distinctions, I do not believe that *Metropolitan Life Ins. Co.* governs the present case or that the Supreme Court would extend the narrow exception to the well-pleaded complaint rule to this case.

Since the well-pleaded complaint rule is controlling, removal jurisdiction is lacking. If there be a preemption defense it should be raised in the state court.

■ C. *ERISA Preemption:* If I am in error applying the well-pleaded complaint rule to this case it would be necessary to address the question whether plaintiff's claims are in fact preempted by ERISA. I conclude that they are not, and thus there is an additional reason why this case must be remanded to the state court. The Third Circuit Court of Appeals recently had occasion to articulate the criteria which govern ERISA preemption determinations. *United*

Wire, etc. v. Morristown Mem. Hosp., 995 F.2d 1179 (3d Cir.1993).[16] The Court noted the breadth of the preemption clause. It referred to the Supreme Court's observation "that a state law 'relates to' an ERISA governed plan, within the meaning of § 514(a)'s preemptive reach, 'if it has a connection with or reference to such plans,'" but that "'[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law "relates to" the plan'" *Id.* at 1191.

The touchstone in determining whether a state law is or is not preempted is Congress' intent that administrative practices of a benefit plan be governed by only a single set of regulations and not a patch-work scheme of regulation resulting from a multitude of state laws.

The first area of inquiry is suggested by the Third Circuit's statement that "[a] rule of law relates to an ERISA plan if it is specifically designed to affect employee benefit plans, if it singles out such plans for special treatment, or if the rights and restrictions it creates are predicated on the existence of such a plan" *Id.* at 1192.

Obviously CEPA, New Jersey's whistleblower statute, has none of these criteria. It applies to employer-employee relationships generally not just to those where a plan governed by ERISA is involved. It does not single out such plans for special treatment, and the rights and restrictions which it creates are not dependent upon the existence of a plan.

However, as *United Wire* points out, the inquiry does not end there, "A state rule of law may be preempted even though it has no such direct nexus with ERISA plans if its effect is to dictate or restrict the choices of ERISA plans with regard to their benefits,

ERISA plan. In *Anderson,* plaintiff was a participant in the plan as well as a fiduciary. *Anderson,* 11 F.3d at 1314. Anderson "had responsibilities for all domestic short and long-term investments for all pension portfolios." *Id.* at 1312. Anderson was in the same proximity as Hashimoto; his actions were more clearly those of a fiduciary of a plan.

16. In *Travelers Insurance Company v. Cuomo,* 14 F.3d 708 (2d Cir.1994), the Second Circuit, un-

like the Third Circuit, held that state surcharges upon hospital rates imposed a significant economic burden on commercial insurers and HMOs whose plans were subject to ERISA and thus the state regulations were preempted. Whether the Supreme Court ultimately upholds the Second or Third Circuit is immaterial for present purposes. The kind of analysis prescribed in *United Wire* (and not rejected in *Travelers Insurance*) will still be applied.

structure, reporting and administration, or if allowing states to have such rules would impair the ability of a plan to function simultaneously in a number of states." *Id.* at 1193.

An analysis of plaintiff's claims, the PRISA accounts, and defendant's role in the administration of these accounts demonstrates that permitting plaintiff to prosecute his state law claims would have none of the dire effects which would call into play ERISA's preemption provisions. The cases upon which defendant relies involve situations in which the state law claims touch much more closely the administration of an ERISA plan.

In the first place, none of the PRISA accounts are themselves ERISA plans. None is a "plan, fund, or program ... established or maintained by an employer or by an employee organization, or both." as defined in 29 U.S.C. § 1002. Rather, the PRISA accounts are vehicles through which ERISA plans and other non-ERISA institutional funds can invest their money. As Assistant General Counsel Joseph D. Margolis stated in his certification:

> participation in the PRISA Portfolios is limited to pension plans qualified under Section 401(a) of the Internal Revenue Code, governmental plans qualified to hold separate account contracts, and other plans where a unit value account is maintained for each participant and 33% or less of the fund for which such unit value is determined is placed in PRISA.

A state whistleblower action by an employee of an employer which manages funds in which ERISA and non-ERISA entities invest some of their assets is remote indeed from the ERISA plans themselves and could have no effect upon their administration.

Defendant argues that it is an ERISA fiduciary "as a matter of law because it provides investment advisory services and manages pension fund assets...." (Brief of defendant in support of its motion to dismiss, at 6). Defendant claims that because it provides advisory services and manages pension fund assets, it is an ERISA fiduciary, hence this case should fall under the ERISA preemption clause:

> Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 405(c)(1)(B).

29 U.S.C.A. § 1002(21)(A). See 29 C.F.R. § 2510.3–21(C) for a definition of investment advice.

Whether defendant is an ERISA fiduciary, and if so, to what extent its activities are fiduciary activities is a question which would require further factual data:

> the inclusion of the phrase "to the extent" in § 1002(21)(A) means that a party is a fiduciary only as to the activities which bring the person within the definition. The statutory language plainly indicates that the fiduciary function is not an indivisible one. In other words, a court must ask whether a person is a fiduciary with respect to the particular activity at issue.

*Coleman v. Nationwide Life Ins. Co.,* 969 F.2d 54, 61 (4th Cir.1992).

If PREI is simply providing services for pension funds then it would not be considered an ERISA fiduciary. *See Painters of Philadelphia Dist. Council No. 21 Welfare Fund v. Price Waterhouse,* 879 F.2d 1146 (3d Cir.1989) (holding that an accounting firm which did an audit did not become an ERISA fiduciary); *Nieto v. Ecker,* 845 F.2d 868 (9th Cir.1988) (holding that a lawyer collecting delinquent contributions was not a fiduciary).

If more than services is being provided, ERISA preemption may extend to some or all of those services and to the activities of some or all of the employees performing those services. The Third Circuit, in the context of employers' responsibilities held

that there needs to be a careful delineation of fiduciary and non-fiduciary duties:

> where an administrator of a plan decides matters required in plan administration or involving obligations imposed upon the administrator by the plan, the fiduciary duties imposed by ERISA attach.... Where, however, employers conduct businesses and make business decisions not regulated by ERISA, no fiduciary duties apply. And, when employers wear "two hats" as employers and as administrators ".... they assume fiduciary status 'only when and to the extent' that they function in their capacity as plan administrators, not when they conduct business that is not regulated by ERISA."

*Payonk v. HMW Industries, Inc.,* 883 F.2d 221, 225 (3d Cir.1989) (citations omitted). *See also Hozier v. Midwest Fasteners, Inc.,* 908 F.2d 1155, 1158 (3d Cir.1990) ("Fiduciary duties under ERISA attach not just to particular persons, but to particular persons performing particular functions." *Id.*); *Canale v. Yegen,* 782 F.Supp. 963 (D.N.J.1992).

The manager of funds containing both ERISA and non-ERISA accounts, such as defendant, is much further removed from ERISA plans than an employer who creates an ERISA plan, but the same kind of analysis must be made to determine the extent, if any, to which the fund manager is a fiduciary.

For present purposes I will simply assume without deciding that certain of defendant's activities with respect to the PRISA accounts are those of a fiduciary as defined by ERISA. Plaintiff's whistleblower claims are that defendant as manager of the PRISA accounts inflated the values of certain real estate assets, that this violated defendant's obligations to all of the entities which invested funds in PRISA, and that defendant retaliated against plaintiff for protesting this breach of duty. Defendant asserts that to pass upon plaintiff's claims the court would have to decide ERISA questions and thus subject defendant to the possibility of a patch work scheme of regulation.

Defendant's avowed fears are illusory. The PRISA accounts are not ERISA plans. The administration of the plans which invest-ed in PRISA will not be affected at all by the legal rulings in plaintiff's action. Defendant both as an employer and as a manager of funds in which customers invest is already subject to a multitude of state common law rules, statutes and regulations, and the fact that some of the investors are ERISA plans cannot immunize it from those rules and regulations. It would be an absurd result, one Congress could not have intended, if an investment vehicle could insulate itself from all state regulatory provisions and common law obligations simply by accepting funds from plans subject to ERISA. The reasoning in *United Wire* requires rejection of this result. This conclusion is consistent with decisions in analogous situations, e.g., *Mackey v. Lanier Collection Agency & Service,* 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988); *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enterprises, Inc.,* 793 F.2d 1456 (5th Cir.1986), *cert. denied,* 479 U.S. 1034, 107 S.Ct. 884, 93 L.Ed.2d 837 (1987).

The cases upon which defendant relies are readily distinguishable. In those cases the parties themselves and the challenged actions were much more closely related to an ERISA plan than in the present case.

In *Ingersoll–Rand v. McClendon,* 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990) the plaintiff was a plan member suing the employer which created the plan for an injury (termination to avoid paying benefits) for which ERISA provided a specific remedy.

Again in *Van Camp v. AT & T Information Systems,* 963 F.2d 119 (6th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 365, 121 L.Ed.2d 278 (1992), the plaintiff was a plan member suing the employer which created the plan for an injury (early retirement alleged to be violative of state age and sex discrimination laws). The remedy which plaintiff sought included restoration of full status in the plan. The court intimated that ERISA could have provided plaintiff with a remedy had he sought to avail himself of it, stating that if plaintiff had been willing to assert a claim under federal, rather than state, law it would not have dismissed the complaint.

The two cases upon which defendant places primary relevance are also readily distinguishable.

In *Hashimoto v. Bank of Hawaii*, 999 F.2d 408 (9th Cir.1993), the plaintiff whistleblower was an employee of the employer which created the plan. The actions concerning which she blew her whistle involved direct administration of the plan itself: i) reimbursement of a former employee from a profit-sharing plan for taxes that plaintiff asserted she properly withheld from a lump sum distribution of her account, and ii) recalculation of a former employee's pension plan benefit using final pay, not final average pay allegedly in violation of ERISA regulations.

The *Hashimoto* court observed that "plaintiff's claim under [the Hawaiian whistleblower statute] does not easily fall on either side to the preemption line." This would lead one to conclude that given the significantly different facts in the present case, the Ninth Circuit would find that plaintiff's claim would be on the non-preemption side of the line. Unlike *Hashimoto*, plaintiff is not an employee of the creator of a plan. He is an employee of an employer which holds and invests in real estate funds of many entities, some governed by ERISA and some not so governed. The employer during the course of its investment management activities may be an ERISA fiduciary with respect to some functions and clearly is not with respect to others. Unlike *Hashimoto*, plaintiff's objections to his employer's actions did not relate to administrative decisions of a specific plan. Rather his objections were to policies of an investment fund, which was not an ERISA plan and was simply an investment vehicle of a number of entities, including ERISA plans.

There is possibly a third difference between *Hashimoto* and the present case. In *Hashimoto*, the Court concluded that the plaintiff had the right to bring an order to enforce § 1140, ERISA's whistleblower provision. I have concluded that it is unlikely that a person as remote from an ERISA plan as plaintiff could enforce § 1140 by means of a civil action under § 1132. This, however, is not a critical difference.

The other case upon which defendant places principal reliance is *Anderson v. Elec-*

*tronic Data Systems Corp.*, 11 F.3d 1311 (5th Cir.1994) It is virtually on all-fours with *Hashimoto* and thus it is similarly distinguishable from the present case. Plaintiff was a discharged employee of an employer which created the plan in question. As Manager of Investments and Debt he had responsibilities for investments in pension portfolios, corporate portfolios, and Title IX portfolios. He charged that he was asked to commit four illegal acts, two of which involved approval of payment invoices on behalf of pension portfolios without approval of the pension fund trustees in violation of ERISA. He was also asked to write minutes in violation of ERISA. In addition to being an employee of the creator of the plan, plaintiff was, according to the court's findings, both a participant in the plan and a fiduciary. In these circumstances the court held that plaintiff had an ERISA remedy. *Anderson*, like *Hashimoto*, is readily distinguishable from the present case.

Thus, applying the analysis set forth in *United Wire*, I conclude that ERISA does not preempt plaintiff's cause of action under CEPA. CEPA is a statute of general application which does not single out benefit plans for special treatment and which does not confer rights predicated upon the existence of such plans. Its effects in the present case in no way dictate or restrict the choices of ERISA plans with respect to their benefits, structure, reporting, and administration. Applying state whistleblower statutes to employers which administer funds in which various entities, including ERISA plans, invest would not impair in any way the ability of the plans to function simultaneously in a number of states. Congress did not intend in these circumstances that ERISA preempt whistle blower statutes.

### IV. *Conclusion*

Defendant's motion to strike plaintiff's notice of voluntary dismissal is granted. Plaintiff's motion to remand the case to the State courts is granted. I shall file an appropriate order.