Marilyn JOHNSON, et al.,
Plaintiffs–Appellees,

v.

CITY OF MEMPHIS, Defendant–
Appellee,

Cindy CAPPS, et al., Proposed
Intervenors–Appellants.

No. 01–6111.

United States Court of Appeals,
Sixth Circuit.

Aug. 4, 2003.

Before BATCHELDER, MOORE, and CLAY, Circuit Judges.

CLAY, Circuit Judge.

This appeal arises from an employment discrimination action challenging the Memphis Police Department's July 2000 promotional process. Fifty-two patrol officers, who unsuccessfully competed for promotion to sergeant in the Memphis Police Department's July 2000 promotional process ("Plaintiffs"), filed an employment discrimination action alleging that the City of Memphis ("Defendant") intentionally discriminated against African American and Hispanic American Plaintiffs by eliminating and increasing the weight of certain components of the promotional process after the process had been completed, and intentionally discriminated against Caucasian Plaintiffs by releasing in advance unauthorized study materials for a component of the promotional process to a selected group of African American candidates in violation of 42 U.S.C. § 2000e, *et seq.* ("Title VII"), 42 U.S.C. §§ 1981 and 1983, Tenn.Code Ann. § 4–21–401, and various city ordinances mandating that candidates for promotion be subject to competitive job-related examinations. Forty-three sergeants, who were promoted to the rank of sergeant pursuant to the July 2000 promotional process and were subsequently notified that their promotions were rescinded ("the proposed intervenors"), filed a motion to intervene as of right in the action claiming that they would be adversely affected by Defendant's rescission of their promotions. The district court denied the motion to intervene. The proposed intervenors now appeal. For the reasons set forth below, we **AFFIRM** the district court's denial of the motion to intervene.

## BACKGROUND

Plaintiffs[1] are employed as patrol officers with the Memphis Police Department and competed for promotion to the rank of sergeant in the July 2000 promotional pro-

1. Plaintiffs Marilyn Johnson, Durand Martin, Glenda Brown, Tracy Burford, Robin Campbell, Anthony Davis, Charolette Easter, Larry Echols, Phillip Jackson, Chorcie Jones, Ursala Jones, Stacey Lamondue, Kathleen Lanier, Edward Luellen, Alisa Mitchell, Alvin Moore, Lesley Murrell, Herlancer Ross, Celia Tisby, Vernon Van Buren, Steve Ware, Kedzie White, and Constance Young are African American.

Plaintiffs Fred Acosta and Dorothy Hyman are Hispanic Americans. Plaintiffs Rachelle Barham, Mike Bishop, Mike Blakely, Spencer Briggs, Felix Calvi, Tim Cooper, Craig Cook, James Currin, Sean Dauberger, Brian Dehaan, Charles Gentry, James Grisby, John Harber, Robert Honore, Melaine Howe, James Luckett, Russell Maness, John Mannon, Joseph Marrow, Mike McCord, Michael McCollum, David Payment, Paul Pritt, Mundy Quinn, Anthony Russell, Ricky Swatley, and Paul Tremmel are Caucasian.

cess. Prior to administering the July 2000 promotional process, Defendant informed the candidates that the promotional process would consist of four components: (1) a written test, (2) a practical exercise test, (3) performance evaluations for the previous two years, and (4) seniority points. These four components would account for 20%, 50%, 20%, and 10%, respectively, of each candidate's total score. Defendant also informed the candidates that it would create a list, in descending order, of the candidates' total scores, and would make promotions based on the ranking of the total scores.

During the administration of the July 2000 practical exercise test, Defendant became aware that the test had been compromised due to the advance release of unauthorized study materials. Defendant denied that the test had been compromised and continued with the administration of the test. When members of the news media produced copies of the test while it was still being administered, Defendant admitted that the test had been compromised. After the completion of the test, Defendant eliminated the test from the July 2000 promotional process and increased the weight of the written test and the performance evaluations from 20% to 45%. Seniority points remained 10% of each candidate's total score.

Plaintiffs Marilyn Johnson and Durand Martin filed a complaint on July 11, 2000, alleging that Defendant intentionally discriminated against Plaintiffs on the basis of their race by eliminating the practical exercise test from the July 2000 promotional process and by increasing the weight of the written test after the promotional process had been completed. Plaintiffs alleged that Defendant modified the July 2000 promotional process despite being previously warned that the modification would have an adverse impact on African American candidates. Plaintiffs alleged that Defendant's conduct violated the Fourteenth Amendment of the United States Constitution, 42 U.S.C. § 1983, Tenn.Code Ann. § 4–21–401, and various city ordinances mandating that candidates for promotion be subject to competitive job-related examinations. Moreover, Plaintiffs requested the following relief: (1) Defendant be permanently enjoined from making any promotions pursuant to the July 2000 promotional process; (2) Defendant be required to create and utilize a new promotional process; (3) a receiver be appointed to oversee the development and administration of the new promotional process; and (4) all candidates be permitted to review their total scores prior to the issuance of the promotional list to assure accuracy. In addition, Plaintiffs requested a temporary restraining order enjoining Defendant from making any promotions pursuant to the July 2000 promotional process until a hearing was conducted on Plaintiffs' application for preliminary injunction. By order entered on July 12, 2000, the district court denied Plaintiffs' request for a temporary restraining order.

The same day the district court denied Plaintiffs' request for a temporary restraining order, Defendant created a list, in descending order, of the candidates' total scores for the July 2000 promotional process, and promoted the first sixty-three candidates to the rank of sergeant. Plaintiffs were not selected for promotion.

Plaintiffs amended their complaint on September 12, 2000, adding fifty additional Plaintiffs who were not selected for promotion pursuant to the July 2000 promotional process. Plaintiffs alleged that Defendant intentionally discriminated against African American and Hispanic American Plaintiffs by eliminating the practical exercise test from the July 2000 promotional process and by increasing the

weight of the written test after the promotional process had been completed. Plaintiffs further alleged that Defendant intentionally discriminated against Caucasian Plaintiffs by releasing in advance unauthorized study materials for the practical exercise test to a selected group of African American candidates. Plaintiffs alleged that Defendant's conduct violated 42 U.S.C. § 1981 as well as other civil rights statutes and ordinances alleged in their original complaint. In addition to the relief requested in their original complaint, Plaintiffs requested that sergeants, who had been promoted to the rank of sergeant pursuant to the July 2000 promotional process, be required to compete in a new promotional process, and that any sergeant shown to have received, used, and benefitted from unauthorized study materials be disqualified from competing in the new promotional process.

On December 6, 2000, Plaintiffs filed a motion for partial summary judgment on the basis that the July 2000 promotional process was invalid. Defendant filed a response under seal on January 26, 2001. At a status conference held on April 20, 2001, an expert, employed by Defendant, opined that a new promotional process should be administered because the July 2000 promotional process could not be salvaged. Defendant then conceded that the July 2000 promotional process was invalid and that Plaintiffs' motion for partial summary judgment should be granted. By order entered on June 25, 2001, the district court granted partial summary judgment in favor of Plaintiffs declaring the July 2000 promotional process to be invalid.

After declaring the July 2000 promotional process to be invalid, the district court granted Defendant leave to begin a new promotional process in September of 2001. By letter dated July 3, 2001, Defendant notified sergeants, who had been promoted to rank of sergeant pursuant to the July 2000 promotional process, that their promotions were rescinded and that they would be required to compete in a new promotional process scheduled for September 27, 28, and 29, 2001. Until the new promotional process was completed, the sergeants were given the option of returning to their pre-promotion positions or remaining in their current positions with a 5% out-of-rank pay adjustment. Fifty-one of the sergeants whose promotions were rescinded filed a complaint in the chancery court of Tennessee on July 26, 2001, requesting that Defendant be enjoined from demoting them or, in the alternative, be enjoined from reducing their pay. *See Green v. Memphis*, No. CH–01–1566–1 (Ch. Ct.Tenn. July 26, 2001).

The proposed intervenors, forty-three of the sergeants whose promotions were rescinded, filed a motion to intervene as of right in the district court action on July 27, 2001.[2] Twenty of the proposed intervenors were plaintiffs in *Green*. Plaintiffs and Defendant filed responses on August 9, 2001 and August 10, 2001, respectively. At a hearing held on August 13, 2001, the district court took the motion under advisement.

By order entered on August 21, 2001, the chancery court enjoined Defendant from demoting the plaintiffs in *Green* pending completion of the new promotional process. *Green v. Memphis*, No. CH–01–1566–1 (Ch. Ct.Tenn. August 21, 2001).

**2.** Two additional groups of sergeants filed two separate motions to intervene as of right in the district court action on July 30, 2001 and August 3, 2001, respectively. By order entered on August 13, 2001, the district court denied the motions. Neither group appealed the denial.

By order entered on August 31, 2001, the district court denied the proposed intervenors' motion to intervene. The proposed intervenors filed, in the district court, a timely notice of appeal on September 7, 2001.

On September 12, 2001, the proposed intervenors filed, in this Court, a motion to stay the district court's partial summary judgment order, and to enjoin Defendant from demoting the proposed intervenors or requiring them to compete in the new promotional process. Defendant filed a response on September 25, 2001. By order entered on September 26, 2001, this Court denied the motions holding that the proposed intervenors failed to demonstrate any irreparable harm they would suffer from competing in the new promotional process.

After receiving a right-to-sue letter, dated July 27, 2000, from the Equal Employment Opportunity Commission ("the EEOC"), Plaintiffs amended their first amended complaint on October 25, 2001, adding an allegation that Defendant's conduct violated Title VII.

This Court held oral argument for the proposed intervenors' appeal of the district court's denial of their motion to intervene on January 31, 2003. During oral argument, the parties informed this Court that all of the proposed intervenors had competed in the new promotional process and had been promoted to rank of sergeant, except for two.

## DISCUSSION

## I. SUBJECT MATTER JURISDICTION

We review questions of subject matter jurisdiction *de novo. Green v. Ameritech Corp.*, 200 F.3d 967, 972 (6th Cir.2000).

The proposed intervenors challenge the subject matter jurisdiction of the district court and of this Court. The proposed intervenors argue that the district court lacked subject matter jurisdiction because Plaintiffs are prohibited from filing employment discrimination claims under both Title VII and 42 U.S.C. § 1983. The proposed intervenors argue that Title VII is the exclusive remedy for Plaintiffs.

In *Day v. Wayne County Bd. of Auditors*, 749 F.2d 1199, 1205 (6th Cir.1984), we held that an employee may sue his or her public employer under both Title VII and § 1983 where the employee establishes that the employer's conduct violated both Title VII and rights derived from the United States Constitution or a federal statute that existed at the time of the enactment of Title VII. The plaintiff in *Day* was employed with Wayne County Board of Auditors. Over an eight-year period, the plaintiff sought and was denied several promotions, and was twice demoted. After receiving a right-to-sue letter from the EEOC, the plaintiff filed a complaint in the district court against his employer alleging violations of Title VII and § 1983. The district court concluded that the plaintiff established a violation of Title VII but failed to establish a violation of § 1983. *Id.* at 1201. The district court denied the plaintiff compensatory and punitive damages reasoning that such damages were not permitted for Title VII violations. *Id.* On appeal, we affirmed the district court's judgment. *Id.* at 1205. We reasoned that Title VII was the plaintiff's exclusive remedy because his employer's only wrongful act was its retaliation for the plaintiff's complaints of discrimination, which was a violation of Title VII but not of § 1983. *Id.*

■ We hold that Plaintiffs are permitted to file employment discrimination claims under both Title VII and § 1983 because they alleged in their second

amended complaint that Defendant's conduct violated both statutes. Title VII provides in relevant part that "[i]t shall be an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e–2(a). In order to establish a prima facie claim of racial discrimination based on a failure to promote under Title VII, Plaintiffs must demonstrate that (1) they are members of a protected class; (2) they applied and were qualified for a promotion; (3) they were considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Allen v. Mich. Dep't of Corr.*, 165 F.3d 405, 410 (6th Cir.1999). The burden then shifts to Defendant to "articulate some legitimate, nondiscriminatory reason'" for failure to promote Plaintiffs. *Vaughn v. Watkins Motor Lines, Inc.*, 291 F.3d 900, 906 (6th Cir.2002) (citing *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 573 (6th Cir.2000)). Plaintiffs bear the ultimate burden of demonstrating that Defendant's proffered reason was a pretext for racial discrimination. *Id.*

■ Plaintiffs alleged a prima facie claim of racial discrimination based on failure to promote under Title VII since they alleged in their second amended complaint that (1) some Plaintiffs are African American and Hispanic American; (2) Plaintiffs competed in the July 2000 promotional process and were qualified for promotion to the rank of sergeant; (3) Plaintiffs were considered for and were not selected for promotion; and (4) other employees of similar or lesser qualifications have been selected for promotion. *See Allen*, 165 F.3d at 410.

■ Furthermore, we hold that Plaintiffs alleged a violation of § 1983. Section 1983 provides in relevant part that "[e]very person who, under color of any statute, ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights ... secured by the Constitution and laws, shall be liable to the party injured in an action at law ..." 42 U.S.C. § 1983. To establish a prima facie claim of racial discrimination under § 1983, Plaintiffs must demonstrate that (1) Defendant acted under color of state law; and (2) Defendant's conduct deprived Plaintiffs of rights secured by the United States Constitution or a federal statute. *Day*, 749 F.2d at 1202.

Plaintiffs alleged a prima facie claim of racial discrimination under § 1983 since they alleged in their second amended complaint that (1) Defendant is a duly chartered municipal corporation under the laws of the State of Tennessee; and (2) Defendant's modification of the July 2000 promotional process, after it had been completed, deprived African American and Hispanic American Plaintiffs of promotional opportunities in violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. Thus, the district court had subject matter jurisdiction over Plaintiffs' employment discrimination claims filed under both Title VII and § 1983.

■ The proposed intervenors pointed out at oral argument that this appeal may be moot with respect to the forty-one proposed intervenors who competed in the new promotional process and were promoted to the rank of sergeant. We agree that this appeal is moot with respect to those forty-one proposed intervenors because the relief requested in their motion to

intervene-that Defendant be enjoined from demoting them or requiring them to compete in the new promotional process-would, if granted, be of no value to them. *See McPherson v. Mich. High Sch. Athletic Assoc., Inc.*, 119 F.3d 453, 458 (6th Cir.1997) (stating that " '[t]he test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties' ") (quoting *Crane v. Ind. High Sch. Athletic Ass'n*, 975 F.2d 1315, 1318 (7th Cir.1992)). However, it would appear that this appeal is not moot with respect to the two proposed intervenors who were not promoted pursuant to the new promotional process because the relief would, if granted, enjoin Defendant from demoting them or requiring them to compete in another promotional process. *See McPherson*, 119 F.3d at 458–59. We will thus review the merits of this appeal as pertaining to only those two proposed intervenors.

## II. INTERVENTION AS OF RIGHT

Federal Rule of Civil Procedure ("Rule") 24(a) provides:

> Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed.R.Civ.P. 24(a).

We have interpreted Rule 24(a) as establishing a four-prong test that must be satisfied in order for the district court to grant intervention as of right: (1) the application for intervention is timely; (2) the applicant has a substantial legal interest in the action; (3) the applicant's ability to protect that interest may be impaired in the absence of intervention; and (4) the existing parties do not adequately represent the applicant's interest. *United States v. Tennessee*, 260 F.3d 587, 591 (6th Cir.2001) (citing *Mich. State AFL–CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir.1997)). The applicant has the burden of demonstrating the four prongs, and the failure to satisfy any of the four prongs prevents the applicant from intervening as of right. *Linton v. Comm'n of Health & Env't*, 973 F.2d 1311, 1317 (6th Cir.1992).

### A. The Timeliness Prong

We review a district court's denial of intervention as of right *de novo*, except for the timeliness prong, which is reviewed for abuse of discretion. *Tennessee*, 260 F.3d at 591. However, when a district court fails to make findings regarding timeliness, our review of the timeliness prong changes from abuse of discretion to *de novo*. *Stupak–Thrall v. Glickman*, 226 F.3d 467, 472 n. 5 (6th Cir.2000). Accordingly, our review of the timeliness prong in this action is *de novo* since the district court made no findings regarding timeliness. *Id.*

We have held that the following five factors should be considered in determining timeliness:

> (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention.

*Jansen v. City of Cincinnati,* 904 F.2d 336, 340 (6th Cir.1990). "The determination of whether a motion to intervene is timely should be evaluated in the context of all relevant circumstances." *Id.*

### 1. The Point to Which the Suit Has Progressed.

In *Stupak–Thrall,* we held that the district court properly denied the proposed intervenors' motion to intervene as untimely since the motion was filed over seven months after the complaint was filed, ten weeks after the discovery period had ended, and five weeks after all witnesses, including expert witnesses, had been identified. 226 F.3d at 474. The proposed intervenors in *Stupak–Thrall* filed a motion to intervene as of right in an action filed by lakeshore owners challenging the United States Forest Service's authority to regulate the wilderness area in which the lake was located. We reasoned that timeliness is not merely determined by the time between the filing of the complaint and the motion to intervene, but rather by what steps occurred along the litigation continuum during that period of time. *Id.* at 475. We therefore concluded that the litigation had made extensive progress in the district court before the proposed intervenors filed their motion to intervene. *Id.*

■ Likewise, we find that this action had made extensive progress in the district court before the proposed intervenors filed their motion to intervene. For instance, over a year after the original complaint was filed on July 11, 2000, the proposed intervenors filed their motion to intervene on July 27, 2001. During the period of time between the filing of the original complaint and the motion to intervene, a trial date had been scheduled for July 16, 2001, all witnesses had been identified, expert witnesses had submitted their reports and

testified in court, depositions had been taken, and Plaintiffs' motion for partial summary judgment had been granted. Such extensive litigation activity renders the proposed intervenors' motion to intervene untimely. *See id.* at 474–75.

### 2. The Purpose for Which Intervention Is Sought.

■ The proposed intervenors identify three purposes behind their motion to intervene: (1) to challenge the district court's subject matter jurisdiction; (2) to overturn the district court's order granting partial summary judgment in favor of Plaintiffs; and (3) to enjoin Defendant from taking adverse employment action against them, including demoting them or requiring them to compete in a new promotional process. We find that the purposes are legitimate under the circumstances of this action.

### 3. The Length of Time Preceding the Application During Which the Proposed Intervenors Knew or Should Have Known of Their Interest in the Case.

■ In their motion to intervene, the proposed intervenors claimed that they did not know of their interest in the action until Defendant notified them, by letter dated July 3, 2001, that it did not intend to represent their interest. In other words, the proposed intervenors claimed that they did not know of their interest until July 3, 2001, twenty-four days before filing their motion to intervene on July 27, 2001.

We find that the proposed intervenors knew or should have known of their interest at a much earlier date since an article in a Memphis daily newspaper, dated July 13, 2000, informed the public that an employment discrimination action was filed in the district court challenging the July 2000

promotional process. In addition, news articles dated January 11, 2001, and January 12, 2001, informed the public that candidates who successfully competed in the July 2000 promotional process would have to take a new practical exercise test to be promoted. *See Stotts v. Memphis Fire Dep't,* 679 F.2d 579, 583 (6th Cir.1982).

In *Stotts,* we recognized that newspaper articles can serve as a basis for determining the date which proposed intervenors knew or should have known of their interest in the case. *Id.* The proposed intervenors in *Stotts* filed a motion to intervene as of right in a class action challenging the hiring and promotion practices of the Memphis Fire Department. After eighteen months of litigation and negotiations, a consent decree was entered. Several newspaper articles published in the Memphis area described the case months before the consent decree was entered. We held that the district court properly denied the proposed intervenors' motion to intervene as untimely. *Id.* at 585. We reasoned that the proposed intervenors knew or should have known of their interest at an earlier date since several newspaper articles put them on notice of their interest months before the consent decree was entered. *Id.* at 583.

Thus, we conclude that the proposed intervenors knew or should have known of their interest as late as January 12, 2001– the date of the third newspaper article, over seven months before filing their motion to intervene. *See Cuyahoga Valley Ry. Co. v. Tracy,* 6 F.3d 389, 396 (6th Cir.1993) (finding that the proposed intervenors knew or should have known of their interest in the case from the inception of the lawsuit, but chose to rely on the "best efforts" of the state attorney general to represent their interests); *Tennessee,* 260 F.3d at 592 (stating that proposed intervenors are "obligated to seek intervention as

soon as it is reasonably apparent" that they are entitled to intervene). Accordingly, the seven months preceding the proposed intervenors' motion to intervene during which they knew or should have known of their interest renders their motion untimely. *See Stotts,* 679 F.2d at 582.

### 4. The Prejudice to the Original Parties.

■ Plaintiffs and Defendant argue that if the proposed intervenors are permitted to intervene in the action, the proceedings will be unduly delayed. Given that extensive litigation has occurred in this action, we find that intervention at this late stage will cause undue delay insofar as the proposed intervenors will have to be given additional time to conduct discovery, file motions, and review and respond to the original parties' prior pleadings. Consequently, the original parties would be prejudiced. This factor weighs against intervention.

### 5. The Unusual Circumstances Militating Against or In Favor of Intervention.

■ As pointed out by Plaintiffs, the only unusual circumstance in this action is that the July 2000 practical exercise test was compromised by the advance release of unauthorized study materials to a selected group of African American candidates. Because the proposed intervenors seek to enjoin Defendant from what it is obligated to do-to administer a valid promotional process, this factor weighs against intervention. Therefore, we hold that the proposed intervenors failed to satisfy the timeliness prong.

### B. The Other Prongs

The district court denied the proposed intervenors' motion to intervene holding that they failed to satisfy the third prong-

demonstrate that their ability to protect their interest would be impaired in the absence of intervention. *See Tennessee,* 260 F.3d at 591. The district court reasoned that since the issue of whether Defendant can demote the proposed intervenors can be litigated in the state courts of Tennessee, the proposed intervenors' ability to protect any interest they may have will not be impaired in the absence of intervention. The district court pointed out that the chancery court of Tennessee granted the plaintiffs in *Green* virtually the same relief the proposed intervenors requested in their motion to intervene. *See Green,* No. CH–01–1566–1 at 2.

Because the proposed intervenors' failure to satisfy the timeliness prong prevents intervention as of right, we need not consider the other prongs. *See Linton,* 973 F.2d at 1317. In sum, the district court properly denied the proposed intervenors' motion to intervene.

## I. ACCESS TO DOCUMENTS FILED UNDER SEAL

We review a district court's decision to seal documents for abuse of discretion. *Meyer Goldberg, Inc. v. Fisher Foods, Inc.,* 823 F.2d 159, 160 (6th Cir.1987).

The proposed intervenors argue that the district court violated their Fourteenth Amendment due process rights by denying them access to certain documents filed under seal.[3] The proposed intervenors argue that without access to the documents, they could not determine the respective legal positions of the parties, nor assess the weight and credibility of the evidence.

At the August 13, 2000–hearing, the district court informed the proposed interve-

nors that they could move to have the documents unsealed. The proposed intervenors, however, did not file a motion to unseal the documents and, therefore, waived this issue for appellate review. *See Brown v. Marshall,* 704 F.2d 333, 334 (6th Cir.1983) (stating that "appellate courts do not consider issues not presented to the district court").

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's denial of the proposed intervenors' motion to intervene.

---

**3.** The following documents were filed under seal: (1) disclosures filed September 18, 2000; (2) memorandum and exhibits filed December 6, 2000; (3) deposition transcripts filed January 26, 2001; (4) Defendant's response to Plaintiff's motion for partial summary judgment filed January 26, 2001; and (5) an unidentified document filed March 20, 2001.