NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0233n.06

Case No. 20-6016

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
May 10, 2021
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| SALEM POINTE CAPITAL, LLC, | ) | |
| Plaintiff-Appellee, | ) ) | |
| RARITY BAY PARTNERS, fka Salem Pointe Capital Partners, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE |
| Movant-Appellant, | ) ) | |
| v. | ) ) | |
| | ) | OPINION |
| BEP RARITY BAY, LLC; BALD EAGLE VENTURES, LLC, | ) ) | |
| Defendants-Appellees. | ) | |

**BEFORE: SUHRHEINRICH, GRIFFIN, and DONALD, Circuit Judges.**

**BERNICE BOUIE DONALD, Circuit Judge.** This lawsuit, one which understandably "vexed" the district court, arose from a fee collection dispute gone awry. At issue on appeal is a disagreement over the propriety of the settlement between the named parties. Appellant Rarity Bay Partners ("RBP")[1] appeals the denial of its two motions to intervene and its motion to set aside a stipulation of voluntary dismissal. In essence, RBP argues the appellees—Salem Pointe Capital,

---

[1] RBP previously did business as Salem Pointe Capital Partners, or SPCP. Between the district court's first and second denials of RBP's motions to intervene, SPCP became RBP. As such—and for consistency's sake—when quoting from earlier orders and exhibits, we have changed SPCP to RBP.

BEP Rarity Bay, and Bald Eagle Ventures[2]—colluded in their settlement negotiations to exclude RBP from having a say in those negotiations, despite a written agreement between RBP and SPC that reserved for RBP the right to accept or reject any settlement SPC made in regard to the collection of fees and membership dues. The appellees (the named parties, i.e., SPC and the Defendants), in turn, assert that RBP improperly "waited in the shadows" as the litigation and settlement negotiations proceeded, coming forward only when it disagreed with the terms of the settlement, and as such, RBP's motions to intervene were untimely. The appellees further argue that (1) once they signed their stipulation of dismissal, the district court lost any jurisdiction to consider further matters like the motions to intervene, and (2) RBP either lacks standing to bring a Rule 60(b) motion or that any such motion fails on the merits. Whether SPC breached its contract with RBP, they argue, is a separate matter properly adjudicated through the pending state court action on that very issue. For the following reasons, we **AFFIRM**.

## I. BACKGROUND

### A. The Underlying Litigation

As described by the district court, Rarity Bay Community is a "much-litigated" community of 1,400 residential lots in the eastern Tennessee counties of Loudon and Monroe. In 2015, SPC and RBP jointly acquired assets in the Rarity Bay Community from a court-appointed receiver. The two agreed to jointly manage the future development of the Rarity Bay Community. Defendant Bald Eagle Ventures purchased 102 lots and then conveyed those lots to Defendant BEP Rarity Bay. At issue here are 65 of those lots.

---

[2] Salem Pointe Capital ("SPC") was the original plaintiff. BEP Rarity Bay and Bald Eagle Ventures (collectively, "Defendants" or "Bald Eagle") were the original defendants.

The Rarity Bay Club, located within the Rarity Bay Community, includes various amenities which SPC maintains, in part, by the payment of initiation and membership fees from lot owners in the community. In the underlying lawsuit, SPC alleges that both Bald Eagle and BEP Rarity Bay failed to pay fees owed to SPC for the 65 lots with covenants requiring such payments.

In May 2017, SPC and RBP[3] entered into an "Agreement and Assignment of BEP Rarity Bay, LLC Collection Rights" (the "Collections Agreement"). The Collections Agreement set forth the terms by which SPC and RBP would engage in their collection efforts for the overdue fees. First, the agreement provided that RBP would both select and manage "external counsel." RBP would also be responsible for advancing all costs and expenses incurred by external counsel (50% of which SPC would repay). Second, the agreement provided that RBP "shall have the authority to enter into any settlement and/or mediation" negotiations and that "[t]he terms of any final resolution of settlement will be subject to mutual agreement of both SPC and [RBP]." Finally, under the terms of the agreement, if SPC and RBP received a cash settlement from BEP as a result of the collection efforts, SPC and RBP would equally divide any such proceeds, and if the parties were to obtain title to any properties in the Rarity Bay Community (through either settlement or a judicial sale), RBP had the right to receive those properties (and pay 50% of the lot's value to SPC).

With SPC's consent, RBP (pursuant to the Collections Agreement assignment to RBP of the right to hire external counsel) hired Garrett Swartwood to represent SPC in the collections efforts. Swartwood understood SPC and RBP to be his co-clients. To effectuate those collection

---

[3] The managing partners of each firm—Michael Ayres for SPC and Matthew Daniels for RBP—signed the Collection Assignment.

efforts, in August and September 2018, SPC (through Swartwood) filed suits separately in Loudon County and Monroe County, seeking affirmance of the liens SPC previously placed upon the allegedly delinquent properties.[4] Swartwood alleges in his affidavit that although SPC was the named plaintiff, RBP actually directed his day-to-day matters and litigation strategy.

In those state-court complaints, SPC alleged that both Defendants (Bald Eagle and BEP Rarity Bay) failed to pay any membership dues during the time they have owned lots in Rarity Bay. Defendants then removed both suits to the Eastern District of Tennessee, where they were consolidated.

In February 2019, SPC filed a motion for summary judgment, claiming that it was undisputed that Defendants' deeds contained express covenants (or references to prior covenants) requiring the payment of club membership dues, and as such, SPC was entitled to the outstanding dues. In response, Defendants filed both a cross motion for summary judgment and a motion to amend their answer and counterclaims.[5] The district court granted Defendants' motion to amend the answer and counterclaim and denied both parties' cross motions for summary judgment because with the pleadings still open (given the granting of the motion to amend), the cross motions for summary judgment were unripe.

### B.    Settlement Attempts

The above is apparent from the public docket. There was, however, more going on behind the scenes, including—as RBP alleges—SPC's secret settlement negotiations with Defendants. On February 15, 2019, SPC manager, Michael Ayres, received an email from a Bald Eagle affiliate

---

[4] Nowhere in the complaint does SPC address RBP's role in managing the Rarity Bay, much less the *existence* of RBP. Nonetheless, RBP asserts that the state-court complaints named only SPC as a plaintiff because the liens were recorded in SPC's name alone.

[5] SPC sought to add additional affirmative defenses and to assert counterclaims for declaratory judgment, quiet title, and slander.

regarding setting up a time for mediation and estimated amounts owed. Ayres then reached out to Swartwood, asking, "Do you know why they are reaching out to me on this and when did they request mediation? Has their attorney been in contact with you [Swartwood]?" Based on this, SPC claims that Ayres realized RBP (through Swartwood) would "neither consult with SPC about settlement [nor] discuss settlement with Bald Eagle." Indeed, in a February email to Defendants' counsel, Swartwood expressed RBP's outright unwillingness to settle at the time. Given the impasse between RBP and Defendants, Ayres himself (on behalf of SPC) then reached out to counsel for Defendants, discussing what amounts SPC believed it was owed.

Afterwards, RBP alleges that, unknown to it and Swartwood, SPC secretly reached a settlement with Defendants, one whose terms were unfavorable to RBP. In an email dated March 25, 2019, SPC's manager, Ayres, confirmed SPC's agreement to a $500,000 settlement and—despite the Collections Agreement requiring RBP's consent to any settlement—explained that "[o]nce rejected by Daniels [RBP's managing partner], SPC will accept the settlement and release the liens." Defendants allege (though provide no actual evidence) that SPC represented to them that SPC *itself* had the full authority to settle the case, i.e., Defendants had no knowledge RBP's consent was required.

Two months later, on May 8, 2019, Bald Eagle's counsel (John Baxter) sent Swartwood an email requesting an extension of a briefing deadline because "the principals in the case [were] . . . hammering out the details of a settlement." This email surprised Swartwood because he claims he was not aware of any ongoing negotiations, much less the specific terms of any agreement. Swartwood understood, per the Collections Agreement, that he would need both SPC *and RBP's* written consent to make any settlement demand or counter-proposal. Swartwood then forwarded the email to SPC and RBP representatives, expressing his understanding that there were no

ongoing settlement discussions. He then declined Baxter's request for the briefing extension, given that—at least as far as Swartwood knew—no settlement negotiations were actually taking place. Swartwood also informed Bald Eagle's counsel that any settlement offer should be presented to him as counsel of record.

Bald Eagle then did just that. On May 9, Bald Eagle's counsel sent Swartwood a $500,000 settlement offer, consistent with the March negotiations between SPC and the Defendants. Swartwood responded on May 23 with a counter-offer of $1.7 million. In response, Bald Eagle's counsel rejected that counteroffer, explaining that Bald Eagle's best and final offer was $500,000, and that the offer would expire on June 21, 2019. Swartwood neither accepted the offer nor communicated another counteroffer to Bald Eagle.

Sometime after Bald Eagle's offer expired, SPC and Defendants continued their separate (and purportedly secret) attempts to finalize the settlement. A new attorney, Adam Russell, began working for SPC to manage the settlement negotiations. In August 2019, SPC and Defendants began circulating a draft stipulation of dismissal; Russell, acting on behalf of SPC, signed that draft stipulation. Bald Eagle's counsel, Shane Ramsey, expressed concern that because Russell was not counsel of record for SPC, the district court would not accept the stipulation. Ramsey suggested that SPC either change the stipulation of dismissal's signatory to current counsel (Swartwood) or if Swartwood was no longer counsel for SPC, Ramsey suggested that Swartwood should file a motion to withdrawal and Russell file a notice of appearance. Russell confirmed that he was not counsel of record; Swartwood, he wrote, "is and remains counsel of record." Nonetheless, Russell wrote that "I believe we can make this work." In support, Russell pointed out that even though he was not SPC's counsel of record, he has "represented SPC over the last

couple [of] years in multiple lawsuits," and "[i]t is through that lens that I am reviewing the settlement agreement."

On September 10, RBP became aware that SPC itself was negotiating with Defendants because SPC told Swartwood on August 28 that Defendants offered $500,000 again to settle. On September 11, Shannon Van Tol, counsel for RBP alone (in contrast to Swartwood who jointly represented RBP and SPC), contacted SPC's attorney, asking that he direct Ayres (SPC's manager) to cease settlement communications with Bald Eagle, as the Collections Agreement "does not allow SPC to interfere with RBP's collection strategy nor to enter into unilateral settlement negotiations with Bald Eagle." The next day, Van Tol explained to SPC's counsel all of the reasons that RBP found the $500,000 settlement to be inadequate and not in the best interests of the parties. On September 30, SPC and Bald Eagle signed a settlement agreement to settle the case.

On October 2, Swartwood called Bald Eagle's counsel (John Baxter) to discuss the deadlines for Bald Eagle to file an amended answer/counterclaim and for SPC to file a response to the counterclaim.[6] During that call, Swartwood claims that Baxter never told him SPC and Defendants had already reached an agreement such that the discussion of filing deadlines and further discovery was moot, at best. In that call, Baxter agreed to Swartwood's requested extension of time to file a response to Bald Eagle's counterclaim, not mentioning that later that very night, the parties intended to file their first stipulation of dismissal.

---

[6] On September 19, 2019—four days before the district court denied the cross motions for summary judgment and granted Defendants' motion to amend their answer and counterclaims—SPC (without Swartwood's knowledge) signed releases of the liens on the relevant properties.

### C.     The First Stipulation of Dismissal and Motion to Intervene

Later that same evening, Russell filed an Agreed Stipulation of Dismissal on behalf of SPC and Defendants. Russell never filed a notice of appearance, nor did Swartwood select or authorize him to file that stipulation. That stipulation was signed by Russell (for SPC) and Ramsey and Baxter (for Defendants). Swartwood claims that Russell emailed him on the evening of October 2 to inform him that SPC and Defendants agreed to a settlement and to dismiss the action. Swartwood first saw the stipulation on the morning of October 3.[7] Swartwood, who expressly told Bald Eagle's counsel (Ramsey and Baxter) that all settlement negotiations must come through him, says that neither of them ever informed him of the settlement discussions, nor did they ever ask whether Russell or others had the authority to settle the suit.

The same day Swartwood learned of the first stipulation of dismissal, RBP filed its first motion to set aside the stipulation of dismissal. In that motion, RBP asserted that SPC had no authority to enter a settlement and dismissal of the claims against Defendants without RBP's approval because the Collections Agreement required RBP's consent. RBP claimed that Defendants either knew or should have known that SPC lacked that authority, particularly where counsel of record, Swartwood, did not participate in the signing of the agreement or filing of the stipulation.

Simultaneously, RBP also filed its first motion to intervene. In that motion, RBP described the Collections Agreement whereby RBP's consent was required before any settlement could be resolved. RBP noted that it promptly filed the motion when an attorney who had not previously

---

[7] Adam Lorry, an agent for Bald Eagle, wrote in an email the morning of October 3: "Its [*sic*] done. Hold on to your seat, now we will see RBP's next move . . . ." To the extent this reveals Bald Eagle's knowledge of the contrary interests of RBP, this email contradicts Bald Eagle's counsel's statement before the district court that although Bald Eagle knew of the *existence* of RBP, Bald Eagle was "unaware of [RBP's] legal interest in this case . . . throughout the entirety of this lawsuit."

appeared in this case, Russell, signed the stipulation of dismissal without the knowledge or consent of RBP or Swartwood.  RBP asserted that as SPC's partner and assignee of collections rights and proceeds, RBP had a substantial legal interest in the resolution of this case, and any such interest would be impaired without intervention.  As such, RBP primarily sought intervention as of right under Rule 24(a).  Alternatively, RBP sought permissive intervention under Rule 24(b) because RBP has either a claim or defense that shares a common question of law or fact with the underlying litigation.

At a case management conference on October 8, 2019, Bald Eagle argued that it had no knowledge of RBP's interests in this litigation and that it was not Bald Eagle's burden to know which attorney had the authority to sign any settlement agreement.  The district court, however, noted that Bald Eagle should have been alerted when an entirely new attorney, Russell, began acting on behalf of SPC rather than counsel of record, Swartwood.  Bald Eagle, however, explained that it relied on the assurances by Russell that he had the authority to settle and dismiss the case.[8] The district court then ruled from the bench, granting RBP's motion to set aside the stipulation of dismissal, denying the motion to intervene, disqualifying all counsel of record, and staying the case for 45 days.  The district court also noted that RBP could later refile its motion to intervene if necessary, although expressed doubt that the court would have jurisdiction over any claims RBP made against SPC, as both are Tennessee citizens for diversity purposes.

On October 11, the district court entered a written order to the same effect.  Considering RBP's motion to set aside the dismissal under Rule 60(b), the district court found that RBP had

---

[8] An email from Bald Eagle's counsel contradicts this assertion.  In that email on August 15, 2019, that counsel (Ramsey) voiced his concern over Russel's authority to sign the stipulation of dismissal without being counsel of record.  Bald Eagle, then, at least was on notice that Russell's authority to sign the stipulation was dubious. We consider below whether this knowledge affects the propriety or validity of the settlement and stipulation of dismissal.

standing to bring such a motion because RBP was in privity with SPC, had interests directly affected by the stipulation of dismissal, and raised a claim of fraud on the court. Under Rule 60(b)(4), the district court found that the stipulation must be set aside for voidness because under Rule 41(a)(1)(ii), a stipulation must be signed by "all parties to the action." Russell—SPC's signatory—had not, however, appeared in the case and "[u]p until the filing of the stipulation of dismissal, there was not an iota of indication that Mr. Russell was representing SPC." Consequently, the district court found that the stipulation of dismissal "was a nullity from its inception" and set it aside as void. The district court also found that Rule 60(b)(6)—which applies to set aside a judgment or order in "exceptional or extraordinary circumstances"—also provided grounds for setting aside the stipulation. Finding that the stipulation, even if valid was "the fruit of either confusion or duplicity," the district court determined that "[p]rinciples of equity mandate relief."

In November 2019, RBP, SPC, and Bald Eagle participated in a mediation. The parties then filed a joint status report with the district court, expressing their desire to continue the stay to both allow mediation to continue; the parties also wanted to continue the stay because RBP filed a separate suit in the Knox County Circuit Court on October 11, in which RBP sought to set aside the settlement between SPC and Defendants.[9] (R.69-3, PageID 3304, 3307).

Then, on May 20, 2020, SPC and Defendants filed a second status report with the district court in which they noted they had engaged in "several meaningful discussions" about the suit and were considering ways to expeditiously resolve the suit. RBP, now represented by Adrienne

---

[9] Though the record does not appear to include filings from that Knox County lawsuit, RBP claims that in that suit it does not seek collection of unpaid fees but rather seeks to have the lien releases set aside so that foreclosures may proceed in this federal action. The parties also note that the settlement funds from this action (the $500,000) are currently held in escrow in the Knox County Circuit Court, as the parties await a ruling on their cross motions for summary judgment.

Anderson, filed a separate status report that same day. In that report, RBP claims that an attorney for Bald Eagle refused to allow RBP to participate in the May status report. RBP also took issue with the SPC/Defendants' status report indicating a desire to settle the lawsuit; as RBP noted in its status, report, "[e]very party and every attorney knows that the [Collections Agreement] provides that **RBP** will have the authority to select external counsel to prosecute the foreclosure of the liens against [Bald Eagle's] property . . . and that RBP will have authority to manage and instruct external counsel."

### D. The Second Stipulation of Dismissal and Motion to Intervene

On May 22, two days after the filing of the two status reports, RBP filed its second motion to intervene. In that motion, RBP attached an affidavit from Swartwood as well as documents it discovered through the Knox County action, documents that RBP believes show that SPC and Defendants "colluded to hide their settlement negotiations from RBP" despite both SPC and Defendants' knowledge of RBP's interests. This time, RBP's proposed complaint in intervention made claims only against Defendants, thus avoiding the possible jurisdictional issues with RBP bringing claims against SPC.

Weeks later, on June 5, SPC and Defendants filed their second stipulation of dismissal and "request for issuance of final order of dismissal with prejudice." In that filing, SPC and Defendants noted that once the parties signed the settlement agreement, "there is nothing left for the court to do as there is no justiciable case or controversy to adjudicate." They also asserted that the only remaining dispute was between SPC and RBP. RBP, the parties noted, "has every right to bring its claim for breach of contract and seek any and all damages suffered; however this has nothing to do with the Defendants" in the federal lawsuit.

Three days after the filing of that second stipulation of dismissal, RBP filed its second "Motion to Set Aside Joint Stipulation of Dismissal of Lawsuit." The district court, RBP argued, "retains jurisdiction of this case for the purpose of exercising its inherent power to prevent injustice." RBP reiterated its argument that SPC alone lacked the authority to enter into any settlement agreement and, as such, any purported agreement is void, results in a grave miscarriage of justice, and results in a fraud upon the district court.

At bottom, RBP believes that pursuant to the Collections Agreement, it should have had some say in the settlement between the named parties, SPC and Defendants. Those named parties, in turn, believe their signatures on the stipulation of dismissal stripped the district court of jurisdiction to consider RBP's motions, and that even on the merits, those motions should be denied because RBP improperly "waited in the shadows," coming out only once it learned the settlement was not in RBP's best interests.

## II. ANALYSIS

### A.      First Motion to Intervene

Rule 24(a)(2) provides for intervention as of right; if timely filed, the district court must permit anyone to intervene who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). To intervene as of right, the movant must demonstrate "(1)  timeliness of the application to intervene, (2) the applicant's substantial legal interest in the case, (3) impairment of the applicant's ability to protect that interest in the absence of intervention, and (4) inadequate representation of that interest by parties already before the court." *United States v. Tennessee*, 260 F.3d 587, 591-92 (6th Cir. 2001) (citing *Mich. State AFL-*

*CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997)). This Court has adopted a bifurcated standard of review whereby we review the timeliness element for abuse of discretion and the remaining factors *de novo*. *Id.* (citing *Grutter v. Bollinger*, 188 F.3d 394, 398 (6th Cir. 1999)). Though we are to "broadly construe[]" this rule in favor of those seeking to intervene, *Purnell v. City of Akron*, 925 F.2d 941, 950 (6th Cir. 1991), the timeliness determination "is left to the sound discretion of the trial court." *Creusere v. Bd. of Educ. of Cincinnati*, 88 F. App'x 813, 824 (6th Cir. 2003) (citing *Stupak-Thrall v. Glickman*, 226 F.3d 467, 472-73 (6th Cir. 2000); *Bradley v. Milliken*, 828 F.2d 1186, 1191 (6th Cir. 1987)).

Considering RBP's first motion to intervene, the district court denied it as untimely.[10] The timeliness of a motion to intervene is a threshold issue that we must address before considering any other elements of Rule 24. *Blount-Hill v. Zelman*, 636 F.3d 278, 284 (6th Cir. 2011). In assessing such timeliness, we consider several factors:

> (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenor knew or reasonably should have known of his interest in the case; (4) the prejudice to the original parties due to the proposed intervenor's failure, after he or she knew or reasonably should have known of his or her interest in the case, to apply promptly for intervention; and (5) the existence of unusual circumstances militating against or in favor of intervention.

*Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989). In general, we look to the totality of the circumstances when considering timeliness, and no one factor is dispositive. *Davis v. Lifetime*

---

[10] The district court analyzed at length only intervention as of right under Rule 24(a)(2). This is because the timeliness factor is common to both intervention as of right and permissive intervention. *Compare* Fed. R. Civ. P. 24(a) *with* 24(b)(1). Thus, if timeliness is lacking as to intervention as of right, the same is true as to permissive intervention. *See NAACP v. New York*, 413 U.S. 345, 365 (1973); *Stupak-Thrall*, 226 F.3d at 479 (affirming denial of motion to intervene as of right and noting that the same analysis applies equally to permissive intervention).

*Capital, Inc.*, 560 F. App'x 477, 490 (6th Cir. 2014) (citing *Stupak-Thrall*, 226 F.3d at 475);

*Blount-Hill*, 636 F.3d at 284.

*Point to which the suit has progressed.* The district court did not abuse its discretion in finding the first motion to intervene untimely. Consider when RBP filed its first motion to intervene: nearly a year after the case was removed to the Eastern District of Tennessee. Although "[t]he absolute measure of time between the filing of the complaint and the motion to intervene is one of the least importance of these circumstances" in considering this first factor, what *does* matter is "what steps occurred along the litigation continuum *during* this period of time." *Stupak-Thrall*, 226 F.3d at 475. Here, the district court found this factor counseled against intervention because in that year, "there has been extensive progress and substantial motion practice and discovery, including cross-motions for summary judgment." Other motions include SPC's motion to dismiss Defendants' counterclaims, Defendants' motion to consolidate, SPC's first motion for summary judgment, Defendants' motion to amend and file a countercomplaint, and SPC's motion to strike or defer ruling on Defendants' cross-motion for summary judgment.[11]

The district court did not abuse its discretion in deeming this "extensive" or "substantial" progress in the lawsuit. *See Blount-Hill*, 636 F.3d at 285 (affirming denial of motion to intervene as untimely based, in part, on: filing of and granting a motion to dismiss, completion of pretrial conference and issuance of a scheduling order, exchange of discovery, filing of third amended complaint, and filing of a second motion to dismiss). RBP's argument that no discovery had yet

---

[11] Prior to the relevant order on the motion to intervene, the district court entered an omnibus order granting Defendants' motion to amend and file a counter-complaint, denying the cross-motions for summary judgment with leave to refile, and denying as moot SPC's motion to strike Defendants' cross-motion for summary judgment. In that order, the district court first described the "extensive motion practice" that had already taken place *before* the filing of the motion to intervene. The district court denied the cross-motions for summary judgment as unripe because in that same order, the district court granted Defendants' motion to file an amended answer and counterclaim, and SPC had not yet had the chance to respond to those.

taken place is unavailing because this action was premised on purely legal questions regarding the validity and enforceability of the relevant deed provisions and whether those provisions ran with the land or applied only to the original grantor. These questions necessitated little to no discovery; each side was looking at the same deed provisions (which each party, as signatories, presumably already had in their possession) and asking the district court to interpret them in their preferred way. Further, that the named parties had already filed cross-motions for summary judgment indicates that the parties foresaw little need for discovery and were prepared to dispose of this action without such discovery. We cannot, then, use the lack of discovery as a factor in favor of intervention and, as such, those cases finding timeliness based on a lack of discovery are not directly applicable.[12] In short, the district court did not abuse its discretion in finding this first factor favored denying intervention.

*Purpose for which intervention is sought*. The second timeliness factor is the purpose for which intervention is sought. *Blount-Hill*, 636 F.3d at 285. In considering this factor, district courts should look to the "importance of the legal interests asserted." *Davis*, 560 F. App'x at 491 (quotation omitted). The district court here said only that RBP "intervened because SPC no longer wished to perpetuate the case and sought to settle the case behind [RBP's] figurative back." RBP, in turn, claims that it sought to intervene to protect its "significant legal property interests" in the

---

[12] There are several cases in which this Court found untimeliness based on more progress than that in this lawsuit. *See, e.g.*, *Stupak-Thrall*, 226 F.3d at 475 (finding lack of timeliness based on the case being over seven months old; discovery closing ten months prior to filing of motion to intervene; the identification of all witnesses, including experts; the production of expert reports; and the dispositive motion deadline was only seven weeks away); *Creusere*, 88 F. App'x at 825 (noting that case was three years old, discovery was complete, the dispositive motion deadline had passed, and trial was only a month away); *Johnson v. City of Memphis*, 73 F. App'x 123, 132 (6th Cir. 2003) (noting that case was over a year old when motion to intervene was filed, all witnesses were identified, expert witnesses had submitted reports and testimony, depositions were completed, and a motion for partial summary judgment was granted). Though these cases do not necessarily set the *lower* end by which this Court may find untimeliness under the first factor, they do support our finding here that the district court did not abuse its discretion in deciding this first timeliness factor counseled against intervention.

claims against Defendants. Additionally, RBP's first motion to intervene sought to add a claim against Defendants as well as against SPC (for breach of the Collections Agreement).

We find that RBP's stated purposes for intervening were legitimate. In *Stupak-Thrall*, the proposed intervenors proffered a similar interest as to RBP: ensuring their interests were protected in the event of a settlement. *Stupak-Thrall*, 226 F.3d at 475. There, this Court found that this purported interest was "unrealistic" because of the "exceedingly small" likelihood that the parties would settle. *Id.* at 476-77. This case, of course, is markedly different insofar as it was *clear* the named parties intended to settle; after all, the proposed settlement is what led RBP to file its motion to intervene. RBP's interest was clear and legitimate: it believed that SPC was not adequately representing its interests in SPC's settlement negotiations with Defendants, and it further believed that SPC was breaching the Collections Agreement by not consulting with and gaining the approval of RBP before reaching any settlement. These interests are legitimate and thus weigh in RBP's favor.[13]

*Time in which appellants knew of their interest in the case.* Much of the dispute centers on the third factor, i.e., the length of time between when RBP "should have known of [its] interest in the case" and when it filed its motion to intervene. *Grubbs*, 870 F.2d at 345. The parties dispute the triggering point: is it when the proposed intervenor knew or should have known of its *interest* in the case? Or is it when the proposed intervenor knew or should have known that its *interests were not being adequately represented* by the named parties? Though our precedent seemingly favors the latter, even under that more relaxed standard, the record reveals that RBP should have known in at least May 2019 that SPC was not adequately representing its interests.

---

[13] In *Johnson*, this Court summarily found that the stated purposes for intervention were "legitimate under the circumstances of this action" but nonetheless affirmed the denial of the motion to intervene based on the other timeliness factors. *Johnson*, 73 F. App'x at 132. This reiterates that no single factor is dispositive in our timeliness analysis. *Davis*, 560 F. App'x at 490.

Considering this third factor, the district court found that RBP "was not unaware of the progress of the case or its interest in it," but decided to "play the role of shadow plaintiff." The district court explained that an "entity that is aware that its interests may be impaired by the outcome of the litigation is obligated to seek intervention as soon as it is reasonably apparent that it is entitled to intervene." In essence, the district court faulted RBP for what it deemed to be a "wait-and-see" approach. RBP, in turn, argues on appeal that the controlling inquiry should have been not when RBP knew of its interest in the case but rather "whether RBP unreasonably delayed filing for intervention after it had reason to believe its interests were not being adequately represented by SPC."

In *Stotts*, this Court noted that a "party must have been aware of the risk that his interest may be affected by the litigation and that his interest may not be fully protected by the existing litigants." *Stotts*, 679 F.2d at 583 (citing *Mich. Ass'n for Retarded Citizens v. Smith*, 657 F.2d 102, 105 (6th Cir. 1981) and *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 (1977)). Similarly, in *Jansen*, we reversed and found the proposed intervenors' motion was timely when "the proposed intervenors proceeded with haste from the time that they became aware that the City's interest differed from their interest." *Jansen v. City of Cincinnati*, 904 F.2d 336, 341 (6th Cir. 1990). "From the outset of the litigation," we noted, "the proposed intervenors knew their interest would be affected. They were not aware, however, that their interest was inadequately represented by the City until the City responded to the plaintiffs' summary judgment motion." *Id.*; *see also Midwest Realty Mgmt. Co. v. City of Beavercreek*, 93 F. App'x 782, 787-88 (6th Cir. 2004) ("[I]t was not until there was reason to believe [the proposed intervenors'] interests were not being adequately represented by the City that they would have been alerted to the need to seek intervention. . . . The mere pendency of settlement negotiations cannot be deemed to trigger such

awareness. Only notice of objectionable terms in a proposed settlement will ordinarily suffice." (internal citation omitted)). Under this precedent, then, the district court seemingly considered the wrong point by which RBP was obligated to intervene.

However, we need not decide here whether RBP or SPC and the Defendants are correct as to the appropriate triggering point, as RBP would fail under either. Even giving RBP the benefit of the more lenient test, then RBP should have moved to intervene—or at least alerted the district court to its divergent interests—when Swartwood learned that settlement discussions were taking place behind his back in May 2019. On May 8, Swartwood received an email from Bald Eagle's counsel (Baxter) informing Swartwood that "the principals in the case [were] . . . hammering out the details of a settlement that could resolve this matter." Swartwood noted that this surprised him because he was not aware of *any* ongoing negotiations. RBP, however, did not move to intervene for nearly five months after learning that those SPC-Defendants settlement negotiations were taking place; instead, it seems RBP only moved to intervene when it learned that (1) SPC was breaching the Collections Agreement by not obtaining RBP's approval and (2) that the settlement was not as substantial as RBP desired.

It is thus likely that by May 9, 2019, Swartwood at least had constructive, if not actual, knowledge of the divergence of interests and settlement demands, and such constructive knowledge suffices for this third timeliness factor. *Stotts*, 679 F.2d at 583 (finding publication of newspaper article about litigation sufficed for knowledge of proposed intervenor's interest in the case); *see also Johnson*, 73 F. App'x at 132-33 (same); *Davis*, 560 F. App'x at 492 ("Actual notice is not required."). Given the notice that previously-unknown settlement discussions were taking place, and presumably knowledge that SPC and RBP were demanding different settlement amounts, "it would not have required unusual prescience on the part of [RBP] to recognize that

[its] interests were implicated[.]" *Cuyahoga Valley Ry. Co. v. Tracy*, 6 F.3d 389, 396 (6th Cir. 1993) (finding that although intervenors were entitled to rely upon the state attorney general's efforts to protect their interests, they were "not, however, entitled to then enter the proceedings after the case has been fully resolved, in an attempt to achieve a more satisfactory resolution").

In sum, under this third timeliness factor, even if RBP was not obligated to intervene until it *should have known* that its interests were not being properly represented by the named parties, RBP should have known (or did know) in May of 2019 that SPC was not adequately representing its interests. Because RBP did not move to intervene for five months after that, the district court did not abuse its discretion in finding this third factor weighed against intervention.

*Prejudice to the original parties*. The fourth timeliness factor asks district courts to consider the prejudice to the named parties due to the failure to intervene at an earlier point. *Stotts*, 679 F.2d at 584. The district court here found that permitting RBP "to intervene at this late stage would prove prejudicial to the parties and the public," as both "have an interest in the expeditious and efficient disposition of litigation." The district court found that allowing RBP to intervene "would only result in further undue delay." RBP takes issue with the district court's consideration of prejudice, asserting that the district court wrongly considered prejudice from the intervention itself rather than the incremental prejudice from the delayed intervention. *See Davis*, 560 F. App'x at 493 ("The only prejudice relevant to the timeliness determination is incremental prejudice from a would-be intervenor's delay in intervening, not prejudice from the intervention in and of itself."); *see also Stotts*, 679 F.2d at 584 (describing this factor as the "prejudice to the original parties due to the failure to intervene after the proposed intervenors knew or reasonably should have known of their interest in the case").

RBP is correct that the relevant prejudice is that incremental prejudice—the prejudice from having not intervened earlier rather than the general prejudice resulting from the intervention—but the district court's analysis here, though not lengthy, was that "permitting [RBP] to intervene *at this late stage*" would prove prejudicial to the parties and the public." However, the district court's reference to case's posture makes clear it considered not the general prejudice resulting from intervention, but rather the incremental prejudice resulting from the *timing* of the intervention.

That purported error aside, the prejudice to allowing intervention at this stage weighs heavily in the Appellees favor. RBP filed the motion to intervene after the named parties filed their first stipulation of dismissal and, as the district court described, after "extensive progress and substantial motion practice and discovery, including cross-motions for summary judgment." This fourth factor largely ties into the first factor—the progress of the suit—because when "extensive litigation … has occurred[,] intervention at this late stage would cause prejudice in the form of undue delay." *See Blount-Hill*, 636 F.3d at 286 (considering same factors under progress and prejudice prongs). Along with its motion to intervene, RBP filed its proposed amended complaint in which it added a claim against SPC for breach of the Collections Agreement. This would "force the parties into collateral litigation" over issues that are beyond the scope of the original action. *See Tennessee*, 260 F.3d at 594 (denying intervention as untimely based, in part, because the original parties would be prejudiced by the proposed intervenors' attempt to add a "complicated issue to the litigation" that was "beyond the scope of the suit's initial focus").

This is not like *Jansen* where we held that the district court erred in finding prejudice in its denial of a motion to intervene. There, one factor counseling against a finding of prejudice was that "the original parties' interests are better served by having *all* relevant interests represented

prior to the summary judgment motion's disposition because piecemeal litigation is likely to be avoided." *Jansen*, 904 F.2d at 341. Here, RBP's claim against SPC is not one "piece" of the same litigation; rather, the claim that SPC breached the Collections Agreement is an entirely separate matter appropriately brought in a separate action. And RBP did just that, bringing its separate state-court action against SPC for breach of that agreement.

*Unusual circumstances*. The fifth and final timeliness factor is the "existence of unusual circumstances militating against or in favor of intervention." *Stotts*, 679 F.2d at 582. This Court "does not have an established list of additional factors that it considers in every timeliness analysis" under this fifth factor. *Davis*, 560 F. App'x at 494. The district court here did not mince words, explaining that RBP's "behavior in relation to this litigation militates against intervention" because "[s]hadows and subterfuge find their proper place in spy novels, not litigation." RBP takes issue with this finding, asserting that the district court merely "adopted defense counsel's rhetoric," but it is not an abuse of discretion for the district court to agree with (and adopt the rhetoric or tone of) a party's arguments.

RBP's other argument under this fifth factor is to reiterate its claim that SPC's collusive negotiations with Defendants is an "unusual circumstance" meriting intervention. At bottom, however, it appears that SPC was simply willing to accept a breach of contract claim—one that RBP has already separately brought in state court—so that SPC and Defendants could end this federal matter. Whatever SPC's internal calculus in making that decision, as Defendants note, "[i]f there is a violation of a collateral agreement, such as the Collections Agreement, that is between SPC and RBP elsewhere and does not involve [Defendants]."

### B.  RBP's Rule 60(b) Motion to Set Aside the Stipulation of Dismissal

RBP's *first* motion to set aside the first stipulation is not at issue here; the district court granted that motion, first finding that RBP had standing to bring it, and second finding that the first stipulation of dismissal was void in that it was not signed by SPC's attorney of record. RBP, however, appeals the denial of its *second* motion to set aside the stipulation.  As the district court did, we consider that motion here before the second motion to intervene because the district court's denial of that Rule 60(b) motion (along with the filing of the stipulation of dismissal) divested the district court of jurisdiction to consider the second motion to intervene, i.e., the stipulation of dismissal mooted the motion to intervene.  In other words, if the district court did not abuse its discretion in denying RBP's second Rule 60(b) motion to set aside the stipulation of dismissal, then consideration of the second motion to intervene is unnecessary.

*Standing*.  First, RBP had standing to invoke Rule 60(b), despite Defendants' arguments on appeal to the contrary.  Twice the district court determined that RBP had such standing, finding that (1) RBP was in privity with SPC, (2) RBP's interests were directly affected by the stipulation of dismissal, and (3) RBP raised a claim of fraud on the court.  Fed. R. Civ. P. 60(b) permits a "party or its legal representative" to move for relief from a final judgment, or proceeding for various reasons include—as relevant here—fraud, a void judgment, or "any other reason that justifies relief." Fed. R. Civ. P. 60(b).[14]  Relief under this rule is "circumscribed by public policy favoring finality of judgments and termination of litigation," and as such, the party seeking relief "bears the burden of establishing the grounds for such relief by clear and convincing evidence." *Info-Hold v. Sound Merch., Inc.*, 538 F.3d 448, 454 (6th Cir. 2008) (citations omitted).

---

[14] We generally review denials of Rule 60(b) motions for abuse of discretion but review *de novo* denials of Rule 60(b)(5) motions alleging voidness. *Bridgeport*, 714 F.3d at 939 (citations omitted).

As is clear from the rule's text, the "general rule is that one must either be a party or a party's legal representative in order to have standing to bring any Rule 60(b) motion." *Bridgeport Music, Inc. v. Smith*, 714 F.3d 932, 940 (6th Cir. 2013) (quotation omitted). Nonetheless, this Court has at least recognized that other courts have found exceptions to that general rule. *Id.* at 940-42 (collecting cases) ("[S]everal courts have allowed relief where the nonparty is in some form of privity" or where the nonparty's "interests were directly or strongly affected by the judgment"). For example, in *Dunlop v. Pan American World Airways, Inc.*, 672 F.2d 1044 (2d Cir. 1982), the Second Circuit found that "the principles governing standing to invoke Rule 60 are sufficiently flexible to permit a finding of standing" when the non-party movants were prohibited from bringing a new discrimination action because of a prior federal judgment to which they were not a party. *Id.* at 1047, 1051. Thus, the Second Circuit found that the movants "were sufficiently connected and identified with the [original plaintiff]'s suit to entitle them to standing to invoke Rule 60(b)(6)." *Id.* at 1052; *see also Southerland v. Irons*, 628 F.2d 978, 980 (6th Cir. 1980) (per curiam) (holding that nonparty had standing to bring Rule 60(b) motion alleging fraud because "Rule 60(b) by its own terms does not limit the court's power to set aside a judgment induced by fraud" and noting that "a claim of fraud on the court may be raised by a non-party").

In *Bridgeport*, this Court did not definitively adopt those exceptions because even if they applied in that case, the movant's motion would still fail. *Id.* at 941. The same is true here because as described below for each subsection RBP raises, its arguments are without merit. As such, we need not definitively say whether this Court adopts any exception, other than that recognized in *Southerland*, to the general principles of Rule 60(b) standing.

*Rule 60(b)(3)*. Fed. R. Civ. P. 60(b)(3) permits relief in cases of "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Fed. R. Civ.

P. 60(b)(3). These are situations in which an "adverse party committed a deliberate act that adversely impacted the fairness of the relevant legal proceeding [in] question." *Info-Hold*, 538 F.3d at 455 (alteration in original). This Court has defined such fraud as "the knowing misrepresentation of a material fact, or concealment of the same when there is a duty to disclose, done to induce another to act to his or her detriment." *Id.* at 456 (quoting BLACK'S LAW DICTIONARY 685 (8th ed. 2004)).

The district court here considered RBP's two separate allegations under Rule 60(b)(3). First, RBP alleges that in their stipulation, the named parties fraudulently claimed that:

> After nearly a year of litigation, and following this Court's September 23, 2019, Order granting Defendants' Motion to Amend the Answer and Counter-Complaint and denying the Parties' competing Motions for Summary Judgment, the Parties engaged in meaningful alternative dispute resolution in an effort to resolve the disputes in controversy between them.

RBP's argument is essentially that the district court's September 23 order did not itself cause the parties to "engage[] in meaningful alternative dispute resolution" because, according to the record, the named parties had long before been discussing the settlement. This fails to show clear and convincing evidence of fraud for three reasons. First, under a literal reading of the stipulation, the stipulation does not suggest that the district court's September order itself or alone led to the dispute resolution; the stipulation also references the "year of litigation." Second, the March 2019 emails between SPC and Defendants discussed *terms* of an agreement but did not definitively settle the dispute. Third and finally, the parties did not sign their settlement agreement until September 30, which is consistent with the stipulation's statement that the September 23 order led to the dispute's resolution. Accordingly, the timeline and a literal reading of the stipulation belies RBP's assertion that the "record in this matter demonstrates beyond any doubt that the settlement between

SPC and Bald Eagle was not the result of meaningful alternative dispute resolution that occurred after the court's September 23, 2019 Order."

The second argument under Rule 60(b)(3) is a more general allegation of misconduct: the named parties' conduct amounted to fraud through their allegedly collusive negotiations. The district court considered the timeline of events and the allegations of collusion and duplicity, explaining that it was "greatly displeased by the conduct of nearly everyone involved in this case." However, the district court then concluded that "it will not set aside the stipulation of dismissal because of [SPC and the Defendants' misconduct] to save RBP from the fruits of its own conduct. In other words, RBP made a bed of duplicity and must lay in it." We agree with the district court that any misconduct regarding the settlement, including assertions in the stipulation as to who had the authority to sign the settlement, are "issues to be resolved in the state court action and do not provide a basis for setting aside the stipulation of dismissal." In sum, the district court did not abuse its discretion in denying relief under Rule 60(b)(3).

*Rule 60(b)(4).* Next, Rule 60(b)(4) allows for relief if "the judgment is void." Fed. R. Civ P. 60(b)(4). In *United Student Aid Funds, Inc. v. Espinosa*, the Supreme Court explained just how limited Rule 60(b)(4) is; courts considering Rule 60(b)(4) motions "generally have reserved relief only for the exceptional case in which the court that rendered judgment lacked even an 'arguable basis' for jurisdiction." 559 U.S. 260, 271 (2010) (quoting *Nemaizer v. Baker*, 793 F.2d 58, 65 (2d Cir. 1986)). Void judgments are those that are "so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final," and "[t]he list of such infirmities is exceedingly short." *Id.* at 270.

In considering Rule 60(b)(4), it is important to compare the first and second motions to set aside the stipulations of dismissal. Ruling on the first motion, the district court found that the first

stipulation was a "nullity from its inception" because it was signed by Adam Russell, an attorney not of record. Regarding the second stipulation, however, the district court explained that "unlike before, the [second] stipulation of dismissal is neither facially nor fatally deficient." Both the district court and the Appellees rely upon a persuasive Seventh Circuit case to highlight the foundational problem with RBP's argument here. There, the appellant filed a motion under Rule 60(b), arguing that "the judgment was void because the settlement agreement was void." *Tsironis v. Bismarck Hotel*, 74 F.3d 1242, at *2 (7th Cir. 1996) (table). This sort of argument, as the district court noted below, "rests on the 'rather odd proposition' that the underlying settlement is void and 'the settlement agreement and the judgment are somehow proxies for each other.'" R. 78, PageID #3370 (quoting *Tsironis*, 74 F.3d at *2).

Settlement agreements are not orders or judgments; they are contracts. Any purported invalidity or voidness in the settlement agreement between SPC and Defendants does not thereby render invalid or void the district court's judgment. If RBP believes that SPC breached the contract between SPC and RBP, that matter is properly before the Knox County Circuit Court. The district court did not err in refusing to set aside the stipulation of dismissal under Rule 60(b)(4).

*Rule 60(b)(6)*. Finally, under Rule 60(b)(6), a catchall provision, a district court may set aside a judgment for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). As explained above, relief under Rule 60(b) is circumscribed by public policy favoring finality, and "[t]his is especially true in an application of subsection (6) of Rule 60(b), which applies 'only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule.'" *Blue Diamond Coal Co. v. Trs. of UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001) (quoting *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990)). As a result,

courts must grant relief under Rule 60(b)(6) only in "unusual and extreme situations where principles of equity *mandate* relief." *Olle*, 910 F.2d at 365.[15]

RBP argues that because it never selected or consented to SPC's new attorney, Tom Hale, Hale lacked the authority to stipulate to the dismissal. In considering Rule 60(b)(6), the district court conceded that "these circumstances are certainly unusual and extreme, but principles of equity do not mandate relief." Rule 60(b)(6), the district court noted, is "equitable in character," and in this case, the district court found it "difficult to find an innocent party." Even assuming SPC breached the Collections Agreement by selecting its own counsel without RBP's consent, "that breach would not provide a basis to grant RBP relief" under Rule 60(b)(6) as "the propriety of that action is properly left in the capable hands of the Knox County Circuit Court." The district court did not abuse its discretion in making that finding; when a named party hires an attorney, that attorney signs a stipulation of dismissal, and the court grants that stipulation—a matter of common course—we cannot say that that scenario is "unusual and extreme" or that it "*mandates* relief" under principles of equity. *Olle*, 910 F.2d at 365. Whether that attorney and the named party breached a separate private agreement—one between SPC and RBP—that matter is, as the district court duly noted, properly before the Knox County Circuit Court. That RBP was able to bring a separate suit against SPC for breach of the Collections Agreement further supports the finding that equity does not mandate relief here; RBP is not without recourse.

RBP's sole authority supporting its Rule 60(b)(6) arguments is *United States v. 32.40 Acres of Land, More or Less, Situated in Leelanau Cty.*, 614 F.2d 108 (6th Cir. 1980). In that case, the

---

[15] *See also Stokes v. Williams*, 475 F.3d 732, 735 (6th Cir. 2007) ("Even stricter standards are routinely applied to motions under subsection (6) of Rule 60(b) than to motions made under other provisions of the rule."). The standard under Rule 60(b)(6) is stricter than the previous five subsections because those first five already "cover almost every conceivable ground for relief." *Ford Motor Co. v. Mustangs Unlimited, Inc.*, 487 F.3d 465, 469 (6th Cir. 2007) (quoting *Pruzinsky v. Gianetti* (*In re Walter*), 282 F.3d 434, 440 (6th Cir. 2002)).

United States argued that a previous settlement was invalid because the Assistant United States Attorney who agreed to the settlement amount did not comply with federal regulations requiring approval by the proper representative of the Department of Justice. *Id.* at 110. The district court rightfully distinguished this case as involving the United States government and applicable federal regulations mandating DOJ approval. In that case, this Court noted that the defendants' (private landowners) arguments against invalidating the settlement would "almost certainly prevail" if the negotiations were between two private parties. *Id.* at 113. Even if the case were applicable more generally—for the proposition that an invalid settlement can provide relief under Rule 60(b)(6)—that is inapplicable here; the stipulation of dismissal and settlement agreement *were* valid because the attorneys-of-record for each side signed them. In other words, SPC, as the named party, had every right under Rule 41(a)(1)(A)(ii) to stipulate to the dismissal. Whether that action (signing the stipulation) constituted a breach of a private contract does not affect the validity of the stipulation, and as such, it does not mandate relief under Rule 60(b)(6). Therefore, the district court did not abuse its discretion in denying relief under Rule 60(b)(6).

## C. Second Motion to Intervene

That leaves us with RBP's second motion to intervene. Because the Rule 41(a)(1)(A)(ii) stipulation of dismissal was valid (as this time, it was signed by all parties who had appeared), and because RBP's Rule 60(b) motions failed for the reasons explained above, the district court found that RBP's second motion to intervene was moot. The district court did not abuse its discretion in denying the second motion to intervene for two reasons: (1) the valid stipulation of dismissal was self-executing and thereby mooted the motion to intervene, and (2) even if the motion to intervene were not mooted, the motion was untimely for the same reasons as the first motion to intervene.

Fed. R. Civ. P. 41(a)(1)(A)(ii) provides that a "plaintiff may dismiss an action without a court order by filing . . . a stipulation of dismissal signed by all parties who have appeared." That is precisely what happened here when SPC and Defendants—the only named parties—filed their signed stipulation on June 5, 2020. That stipulation was clear and unconditional; the parties explained that "Plaintiff wants nothing more from Defendants, and vice versa." As is clear from the text of the rule, the dismissal resulting from that stipulation required no court order to effectuate the dismissal; such notices are "self-effectuating." *Aamot v. Kassel*, 1 F.3d 441, 445 (6th Cir. 1993). The dismissal resulting from a stipulation under this rule "terminate[s] the district court's jurisdiction except for the limited purpose of reopening and setting aside the judgment of dismissal within the scope allowed by Rule 60(b)." *Hinsdale v. Farmers Nat'l Bank & Tr. Co.*, 823 F.2d 993, 995-96 (6th Cir. 1987) (internal quotation marks and citation omitted); *see also Warfield v. AlliedSignal TBS Holdings, Inc.*, 267 F.3d 538, 541-42 (6th Cir. 2001) ("[T]he plaintiff's stipulation is the legally operative act of dismissal and there is nothing left for the court to do."). Thus, the district court was correct in finding that because the motion to intervene did not fall within the limited scope of jurisdiction concerning a Rule 60(b) motion,[16] the stipulation of dismissal mooted the motion to intervene.

The fact that a motion to intervene was pending before the district court *before* the named parties filed their stipulation of dismissal does not change the district court's mootness analysis. *See, e.g.*, *United States v. Ford*, 650 F.2d 1141, 1143 (9th Cir. 1981) ("Since there is no longer any action in which appellants can intervene, judicial consideration of the [motion to intervene] would be fruitless."). In *Mutual Produce*, the district court considered similar facts wherein a group of

---

[16] Nor did it fall within the district court's continuing jurisdiction over "collateral issues" such as costs, attorneys' fees, contempt charges, or sanctions. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395-96 (1990).

owners and freight claims agents brought a motion to intervene, *after* which the named plaintiffs and defendants filed stipulations voluntarily dismissing the action. *Mut. Produce, Inc. v. Penn Cent. Transp. Co.*, 119 F.R.D. 619, 619-20 (D. Mass. 1988). As here, the proposed intervenors there did not move for a restraining order seeking a stay of those stipulations of dismissal. *Id.* at 620. Because such motions to intervene "are not granted automatically, nor does their filing constitute an automatic stay," the district court found that when the stipulations of dismissal were filed and effectuated, "there [was] no action in which to intervene and the motions to intervene [were] moot." *Id.* at 620-21[17]; *see also Dukes v. Wal-Mart Stores, Inc.*, No. 01-cv-02252-CRB, 2016 WL 4269093, at *2 (N.D. Cal. Aug. 15, 2016) ("That the Proposed Intervenors filed their Motion [to Intervene] *before* the Rule 41(a)(1) dismissal is irrelevant" because a "Rule 41(a)(1) dismissal[] divests[s] the Court of its jurisdiction to hear motions to intervene that were filed prior to the Rule 41(a)(1) dismissal." (emphasis added)); *In re Irish Bank Resol. Corp.*, 2014 WL 1884916, at *3 (Bankr. D. Del. May 12, 2014) ("A stipulation [under Fed. R. Civ. P. 41(a)(1)(ii)] filed during the pendency of a motion to intervene is effective to dismiss the action, since the proposed intervenors do not become parties within the meaning of the Rule until their motion is granted.") (quoting 8 James Wm. Moore, et al., *Moore's Federal Practice* § 41.34[4][b], 41-116 (3d ed. 2013)).[18]

---

[17] RBP's only real arguments against *Mutual Produce* are that its "reasoning is flawed" and that it involved "unique procedural circumstances" in which the proposed intervenors moved to intervene in 600 cases, four days after which the original parties voluntarily dismissed the action. We see no flaw in that court's reasoning, nor are the circumstances there unique. In fact, they are remarkably similar: a proposed intervenor filed a motion to intervene, after which the original parties filed a valid stipulation of dismissal.

[18] *See also Roddy v. Dendy*, 141 F.R.D. 261, 262 (S.D. Miss. 1992) (finding that notice of voluntary dismissal mooted prior-filed motion to dismiss); *Reagan v. Fox Navigation, LLC*, Civ. A. 302-CV-627, 2005 WL 2001177, at *1 (D. Conn. Aug. 17, 2005) ("[C]ourts have ruled that once the parties have filed a Rule 41(a)(1)(ii) stipulation of dismissal, there is no longer a pending case or controversy into which a non-party may intervene."). RBP argues that mooting the motion to intervene would encourage some sort of gamesmanship because "the named parties . . . can dismiss the case before the court ever decides whether he should be allowed to intervene." But voluntary dismissals frequently moot prior-filed motions. *See,*

RBP's reliance on *Midwest Realty* is unpersuasive. In that case, the named plaintiff and defendant settled their claims related to a city zoning ordinance. *Midwest Realty*, 93 F. App'x at 783-84. The district court then entered a *conditional* dismissal order in which it retained jurisdiction to enforce the settlement agreement. *Id.* at 784. Several city residents then filed a motion to intervene, as they saw the proposed settlement as contrary to their interests. *Id.* The district court denied the motion to intervene because, in part, it found that it had no jurisdiction to consider that motion in light of the narrowness of its conditional dismissal order. *Id.* at 785. This Court reversed, explaining that the "district court's ruling is based on a misapprehension of the effect of its *conditional* dismissal order." *Id.* Such conditional dismissal orders, we explained, are "not final until the time to satisfy the condition expires." *Id.* Because the settlement was not yet consummated at the time the residents filed their motions to intervene, the district court erred in finding it had no jurisdiction. *Id.* Such is not the case here, where there was no *conditional* dismissal order; there was no condition subsequent that had to occur for the settlement to be consummated.

Finally, even if the district court did have the jurisdiction necessary to consider the motion to intervene, that motion would be untimely for the same reasons as the first motion to intervene. *See supra*, Part II.A. Thus, RBP's argument that the district court "should have granted RBP's Second Motion to Intervene for the same reasons it should have granted RBP's First Motion to Intervene" necessarily fails given our holding above affirming the district court's timeliness analysis. Nothing in the interim changed the timeliness analysis, despite RBP's argument to the contrary. RBP asserts that in its second motion to intervene, RBP "presented newly discovered

_____

*e.g.*, *Am. Modern Home Ins. v. Insured Accounts Co.*, 704 F. Supp. 128, 131 (S.D. Ohio 1988) (finding notice of voluntary dismissal mooted earlier motion to dismiss). To the extent RBP is raising a fairness argument, we reiterate that RBP is not without recourse. In fact, it has already utilized that recourse through filing its breach of contract claim in state court.

evidence" as to the alleged collusion between SPC and Defendants. This new evidence included, for example, a March 25, 2019 email in which Defendants and SPC appear to have agreed to the material terms of the settlement. That new evidence, however, does not change the timeliness analysis. It still remains true that as of May 2019, Swartwood should have known that the interests of RBP and SPC had diverged and that SPC was not adequately representing RBP's interests in its settlement negotiations. In other words, the newly discovered evidence hints at collusion, i.e., secret settlement negotiations between SPC and Defendants. But RBP (through Swartwood) already had before it evidence of those secret negotiations. The new evidence merely supports the argument that SPC and the Defendants went behind RBP's back to settle this case, but that was already before the district court in considering the first motion to intervene. That new evidence may prove useful in RBP's breach of contract action against SPC, but it does not affect the analysis of whether RBP's second motion to intervene was timely.

In sum, the Rule 41(a)(1)(ii) stipulation of dismissal divested the district court of jurisdiction to consider RBP's second motion to intervene. The district court thus appropriately found the motion to intervene to be moot by virtue of that stipulation. Further, even if the notice of dismissal did not moot the motion to intervene, RBP's second motion to intervene was untimely for the same reasons the district court found the first motion to intervene to be untimely. The allegedly newly-discovered evidence that RBP brought with its second motion to intervene does not alter this outcome; it merely supports the assertion that SPC and Defendants were secretly negotiating without RBP's required consent. The evidence before the district court at the time of the first motion to intervene already included the allegation (with evidentiary support) of that alleged collusion. The new evidence does not change the conclusion that RBP and Swartwood

should have realized earlier that SPC (1) did not represent RBP's interests and (2) did not include RBP in its negotiations with Defendants.[19]

### III. CONCLUSION

In sum, we first hold that the district court did not abuse its discretion in denying the first motion to intervene as untimely because there had already been extensive progress in the lawsuit, intervention after five-month delay would have prejudiced the named parties, and RBP should have intervened when it first learned that SPC was not representing RBP's interests and was negotiating behind RBP's back. Second, even if RBP had standing to bring its Rule 60(b) motion to set aside the second stipulation of dismissal, the district court did not abuse its discretion in denying that motion under Rule 60(b)(3), 60(b)(4), or 60(b)(6). Finally, the district court did not abuse its discretion in denying the second motion to intervene because (a) the valid second stipulation of dismissal deprived the district court of jurisdiction to consider the motion to intervene, thereby rending that motion moot, and (b) even if the district court had considered the motion to intervene on the merits, that motion to intervene was untimely for the same reasons as the first. We therefore **AFFIRM**.

---

[19] RBP makes one final argument, asserting that "[t]o the extent the Second Stipulation of Dismissal [was] a motion requesting the [district court] to enter an order dismissing the action with prejudice under Rule 41(a)(2)," the district court's decision to grant that "motion" was an abuse of discretion. But the stipulation of dismissal was not a motion. As explained above, such Rule 41 notices of voluntary dismissal are self-effectuating and require nothing from the district court. *Aamot*, 1 F.3d at 445.